UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GREGORY BROADY** * | |
| * | |
| *Plaintiff* * | |
| * | Civil Action No. 06-792 (RMC) |
| v. * | |
| * | |
| **ZANZIBAR ON THE WATERFRONT** * | |
| **LLC, and** * | |
| * | |
| **ALLEN IVERSON,** * | |
| * | |
| *Defendants* * | |

**********************************************************************

## DESIGNATION OF EXPERT WITNESSES

Defendant, Zanzibar on the Waterfront, LLC, by and through its attorneys, Andrew B. Greenspan, and pursuant to this Court's Scheduling Order files the following Designation of Expert Witnesses who may be called to this matter:

1. Any Expert identified by other parties;

2. Any of the Health care providers who have examined or treated the Plaintiffs, as reflected in the records produced in discovery, who would be expected to testify accordance with their medical records;

3. Any of the security experts who have examined the security procedures, as reflected in the records produced in discovery, who would be expected to testify accordance with their records;

4. William T. Gaut
   9063 Autumn Haze Drive
   Naples, FL 34109-1501

Mr. Gaut is a **Private Security Expert** who has been requested to perform an Examination of the security issues at question with this matter. Mr. Gaut will testify and render opinions regarding his review of any and all of the Plaintiff's records and reports.

He will testify and render opinions regarding any and all examinations conducted by him or his office of the Plaintiff and the reports made thereafter. A copy of Mr. Gaut's report will be provided. The Defendant also reserves the right for Mr. Gaut to testify on any and all issues raised by the Plaintiff as it relates to security issues which are addressed by the Plaintiff's expert in discovery and as part of the Plaintiff's case.

The Defendants are currently engaged in medical discovery, and reserve the right to request additional evaluations or reviews of records based upon the additional information obtained in discovery.

                                                    Respectfully submitted,

/s/ Andrew B. Greenspan

Andrew B. Greenspan    #483501
8600 LaSalle Road
Suite 620 – Oxford Bldg.
Towson, MD  21286
greensa@nationwide.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of June, 2007, a copy of the foregoing Designation of Expert was mailed by first class mail, postage prepaid, to:

Tina L. Snee, Esq.
Tina L. Snee & Associates,
9401 Lee Highway, Suite 206
Fairfax, VA 22031

*Attorney for Plaintiff Broady*

Alan C. Milstein, Esq.
Sherman, Silverstein, Kohl,
Rose & Podolsky, P.A.
4300 Haddonfield Rd. – Suite 311
Pennsauken, NJ 08109

*Attorney for Co-Defendant Iverson*

/s/ Andrew B. Greenspan

Andrew B. Greenspan   #483501

# William T. (Bill) Gaut

Address
9063 Autumn Haze Drive
Naples, Florida 34109-1501
Phone: 1-239-593-8033

# CURRICULUM VITAE

**William T. (Bill) Gaut**

**Professional Experience:**

Legal Consultant
Professional case review and Expert Witness opinion in the fields of Public Law Enforcement and Private Security.

Adjunct Professor
(Jefferson State Comm. College; Birmingham, AL)
Teaching the following subjects:

- Criminal Law
- Homicide Investigation
- Fundamentals of Criminal Investigation
- Fundamentals of Criminal Justice (Police Procedures)

Administrator/Director
(Jefferson County District Attorney's Special Services Division; Birmingham, AL)
Designed and performed the initial public research project to determine the need and wrote the organization's Daily Operations Procedures. Screened/hired the clerical and investigative staff. Administered the division's daily operations including Purchasing, Accounts Payable/Receivable, Payroll, Trial Preparation, Case Filing System, Courtroom Litigation, Computer System Design and Marketing. The Special Services Division specialized in the investigation, prosecution, and recovery of worthless checks, fraud, embezzlement and related white-collar financial crimes. Budget: $750,000.00. Recovered Funds: $2 Million.

Captain of Detectives
(Birmingham Police Dept; Birmingham, AL)

- Uniform Patrol Division
    - Performed the normal duties of a uniformed police patrol officer.
- Police Academy Instructor (Sergeant)
    - Assisted in the development and implementation of the Alabama Minimum Standards & Training Commission Curriculum, Policies and Procedures.
- Detective Sergeant - Homicide Division

- o Lead investigator for literally hundreds of major felony cases of Homicide, Rape, Felony Assault, and Kidnapping.
- **Lieutenant** - Chief's Administrative Staff
    - o Supervised the business aspect of the department including purchasing of daily supplies and equipment, Preparation/Implementation/Control of the annual $36 million budget, and Departmental Inspections. Responsibilities included licensing, inspection and supervision of City Emergency Medical respondents. Coordinated the Departmental Accreditation activities.
- **Captain** - Precinct Commander (East & North Precincts)
    - o Supervised the daily activities of 90-120 officers.
- **Detective Captain** (Detective Division Commander)
    - o Supervised the activities of 130 investigators.

**Other Professional Experience:**

Security Training Institute, Inc.
CEO and majority stockholder of this multi-state SubChapter-S corporation that was approved by the States of Alabama and Louisiana. STI specialized in the training and certification of private and proprietary security guards and security management. STI trained for virtually every industry including but not limited to Hotels, Manufacturing, Banking, Private Security, Food Service, Retail Department Stores, Public Police Officers, Public Utilities, Shopping Malls, and Major Universities. In 1982, we expanded to include investigative and legal services offered to attorney clients.

Regularly taught at the Birmingham Police Academy in the fields of Homicide Investigation, Criminal Investigation, Police Management, Emergency Response, and Fundamentals of Law Enforcement.

Lectured in the fields of Criminal Justice, Security Fundamentals and Business Management at the following Universities:

- University of Alabama
- University of Alabama-Birmingham
- Birmingham Southern College
- Auburn University
- Jefferson State Community College

**Education:**

AA   Law Enforcement
     Jefferson State Community College
BS   Criminal Justice
     University of Alabama-Birmingham
MA   Public & Private Management (i.e. MPA/MBA)

    Birmingham Southern College

PhD　Working toward Doctor of Philosophy in Business Administration
    With emphasis in Criminal Justice
    Completed 33 of 81 required hours as of 1/1/2007
    North Central University

---

Developed by LawInfo.com ™ Copyright © 2007 | Site Map

LAW OFFICE OF
## ANDREW B. GREENSPAN
Employees of Nationwide Mutual Insurance Company®

8600 LaSALLE ROAD
OXFORD BUILDING, SUITE 620
TOWSON, MARYLAND 21286-5955

(410) 339-7919
FAX (410) 339-4641

| ANDREW B. GREENSPAN | SCOTT C. WOODS |
| DAVID P. BATTEN | A. ANNE POLING |
| NEAL S. WADLER | JOEL S. RICHARDSON |
| SANJEEV MODI | TARA McDOWELL |
|  | MARK L. CANTOR |

June 28, 2007

Tina L. Snee & Associates,
Tina L. Snee, Esq.
9401 Lee Highway, Suite 206
Fairfax, VA  22031
VIA FACSIMILE – 703-352-8881

Matthew Tucker, Esq.
Sherman, Silverstein, Kohl,
Rose & Podolsky, P.A.
4300 Haddonfield Rd. – Suite 311
Pennsauken, NJ  08109
VIA FACSIMILE – 856-662-0165

Re: **Broady v. Zanzibar on the Waterfront**
Claim No.: 959317-051
My File No.: 06TW00617

Dear Ms. Snee & Mr. Tucker:

Enclosed please find a copy of our expert, William T. Gaut's Report of Expert Witness.

If you have any questions please do not hesitate to contact our office.

Sincerely,

Kristy Zugay
Paralegal for
Andrew B. Greenspan, Esq.

/klz
Enclosure

cc: C. Bryan Ruth, Claims Representative

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| GREGORY BROADY, | : |
| Plaintiff, | : |
| v. | : Civil Action No.: 06-0001774 |
| ZANZIBAR ON THE WATERFRONT, LLC | : |
| and | : |
| JOHN DOE | : |
| Defendants. | : |

## REPORT OF EXPERT WITNESS

Following are my findings and opinions in the above styled case. My opinions are based, among other things, on my review of documents listed below and made a part of this report. Additionally, the following listed sources were also used as a basis for my opinions. Those publications or documents listed below which are too voluminous or costly to include herein are identified and their sources provided.

1. Certain State Statutes.
2. My personal and professional experience as a nationally recognized Security Training instructor.
3. My personal and professional experience as a command level supervisor for a public Law Enforcement Agency.
4. My education in the field of Law Enforcement and Criminal Justice.
5. My teaching experience and education in the disciplines of Criminal Justice and Private & Proprietary Security.
6. My experience as owner and operator of a multi-state approved Security Training Corporation.
7. The Security Handbook by Philip P. Purpura, 2003, pub: Butterworth & Heinemann.
8. Contemporary Security Management by John J. Fay, 2002, pub: Butterworth & Heinemann.
9. Introduction to Security by Robert J. Fischer & Gion Green, 1998, pub:

        Butterworth & Heinemann.
10. <u>The Effective Security Officer's Training Manual</u> by Ralph F. Brislin, 1998, pub: Butterworth & Heinemann.
11. Zanzibar on the Waterfront Security Operations Manual.
12. Norman Bates Expert Report.
13. Complaint.
14. PLAINTIFF'S ANSWERS TO DEFENDANT ZANZIBAR ON THE WATERFRONT'S INTERROGATORIES.
15. DEFENDANT ALLEN IVERSON'S ANSWERS & OBJECTIONS TO PLAINTIFF'S INTERROGATORIES & REQUEST FOR PRODUCTION OF DOCUMENTS.
16. ANSWERS TO INTERROGATORIES; Exhibits Daley-2 and Daley-3.
17. Deposition Transcript of Darien Green.
18. Deposition Transcript of Zanzibar on the Waterfront by Michel Daley.
19. Deposition Transcript of Allen Iverson.
20. Deposition Transcript of Ola Olasehinde.
21. Deposition Transcript of Gregory Broady.
22. Deposition Transcript of Wendall Evans.
23. Statement of Danielle Moore dated August 16, 2005.
24. Statement of Cynthia Denise McDaniel dated August 17, 2005.
25. Statement of Gregory Lawrence Broady dated August 16, 2005.
26. "Preventing Customer Altercations in Nightclubs" by Blair J. Berkley; Cornell Hotel & Restaurant Administration Quarterly – April 1, 1997.
27. <u>The Nightclub, Bar and Restaurant Security Handbook</u> by McManus & O'Toole, 3rd Edition; Café Press.

In my testimony, I may refer to any of the facts, data, or standards included in documents or data referenced herein or attached hereto and documents or data received after this date. I may also use any of the documents, standards, or data referenced herein as exhibits in my testimony.

A copy of my current resume is attached (attachment #1) for the purpose of determining my qualifications to speak to this matter. I have been accepted and provided testimony as an expert in this discipline. My compensation as an expert in this matter is as follows:

1. $175.00 per hour for all time expended with respect to review of this case and,
2. $250.00 per hour for all time expended in deposition or testimony and,
3. $50.00 per hour for all port to port travel time and,
4. Reimbursement for all out of pocket expenses incurred for travel and/or lodging.

My understanding of the facts in this case, as articulated by Gregory Broady, is summarized as follows:

    On June 4, 2004, Gregory Broady went to the Zanzibar on the Waterfront restaurant and nightclub located in Washington, DC. After having dinner with two friends, they were all given access to the Sky Club, a restricted VIP area within the establishment. While there, a sports celebrity, Allen Iverson, arrived with a party of friends and

private security personnel. Zanzibar managers cordoned off a section of the Sky Club with metal curtains for the exclusive use of Mr. Iverson and his party. The entrance to the restricted area was then controlled by Iverson's security team and one security guard was posted at the entrance to control entry to the area.

Mr. Broady and two of his companions were seated inside the restricted area prior to Mr. Iverson's arrival and were allowed to remain in the area. After a period of time, Mr. Broady left the restricted area to use the bathroom and was denied access back into the restricted area when he returned. Mr. Broady explained to the first Iverson's security officer that he wanted to return to the area because his female companion was inside and because he left his cell phone at the table. He was again denied entry, referred to a secondary security officer, and told that the other security officer would notify his companion and retrieve the cell phone. Mr. Broady states that while he attempted to direct the second security officer to his companion's location, the first Iverson security officer suddenly struck him in the face causing a serious injury.

After review of the materials previously listed, and based on my education, training and experience in public and proprietary security and public law enforcement, to a reasonable degree of certainty, my findings and opinions in the above styled case are:

1. There was no breach of duty by the defendant, Zanzibar on the Waterfront, that caused or contributed to the injury sustained by Gregory Broady.

2. The injury to Gregory Broady was a sudden and unexpected event that was not reasonably foreseeable or reasonably preventable.

3. There was no excessive force applied to Gregory Broady by any manager, employee, or anyone acting on behalf of the defendant, Zanzibar on the Waterfront.

The bases for my findings and opinions are:

All facts and circumstances of this incident are taken from the statements of Gregory Broady. I have found no other witnesses or supportive evidence to corroborate the allegations made by Mr. Broady. One witness, Danielle Moore, stated that she saw Mr. Broady being struck by a security officer that she thought "was one of Alan Iverson's guys" (pg3). She does not report hearing any of the conversation or seeing any other actions.

Although Mr. Broady states that the assault was completely unprovoked, Ms. Moore states:

"I could just see that the conversation seemed to be getting pretty escalated..."

indicating that there was a confrontation immediately prior to the altercation. Her further view of the incident is questionable in that she reports seeing Mr. Broady struck one time whereas Mr. Broady reports being struck twice.

3

Another witness identified by Mr. Broady was Cynthia Denise McDaniel. Mr. Broady describes Ms. McDaniel as his date for the evening and the person he later called to retrieve his cell phone and accompany him to the hospital. She was attributed as saying "What happened to you" upon meeting Mr. Broady at his car. Ms. McDaniel stated:

> "...**there was this big commotion right at the entrance** to the VIP section. And people was just crowding all around everywhere, but I did see a guy swing, but I didn't know that it was actually involving Greg until later on" [emphasis added].

After the incident was described by Mr. Broady, Ms. McDaniel stated:

> "so then I realized that it was him that had gotten hit or **was in the scuffle** that happened at the Zanzibar" [emphasis added].

She further stated that she did not know if the persons "swinging" were or were not security officers or even part of Mr. Iverson's party. Ms. McDaniel describes multiple people throwing multiple punches [emphasis added]:

> Q.   Okay, but it was **people** with Allen Iverson then, **who were swinging the punches**, is that what you're telling me?
>
> A.   Well, no I don't know if **they** were the actual **ones** that was **swinging the punches**, but **they** were at the entrance to the VIP section, I know, along with some of the guards at the Zanzibar.
>
> Q.   Okay, well that's what I was going to ask you. Those **individuals** who were actually throwing the **punches**, do you know, were **they** security for the Zanzibar or were **they** with Allen Iverson's entourage?
>
> A.   No, I can't say if **they** were.

I next examined the circumstances leading up to and during the injury to Mr. Broady to determine whether or not the defendant, Zanzibar on the Water, adequately performed the duty to reasonably provide for the safety and well being of patrons to that establishment.

Deposition testimony contributed from Darien Green, Ola Olasehinde, Michel Daley, and Wendall Evans indicated that the defendant, Zanzibar, had a security staff of 10-13 officers and a security manager. Testimony confirms that background checks were made on all potential security officers prior to employment and that Zanzibar preferred to hire retired police officers and experienced security officers for the security staff.

In accordance with generally accepted industry standards, security officers were placed at facility entrances, interior control points, elevators, Sky Club, outside and included roving officers inside the club. Patrons were "carded" prior to entrance to insure age limitations. Security officers were provided with walkie-talkies for communication.

4

To provide an "upscale" atmosphere, security officers were required to dress in suits or jackets and wear prominently displayed identification. In accordance with recommended standards, officers were encouraged to avoid confrontations by keeping a low profile and always treating the Zanzibar customer "with complete dignity and respect."

Training was conducted on a regular basis through a plan of frequent meetings with security staff where any security issues would be addressed. The Security Manager states that he was working on a written Security Operations Manual during this period and my conclusion is that the standards within that manual were most likely discussed at the aforementioned meetings.

I saw no evidence of excessive calls for police service during the time of this incident, nor in the period preceding the incident. Zanzibar employees and security personnel were instructed to call the 911 emergency number whenever necessary.

In terms of this incident, there is evidence that Zanzibar security officers and manager interacted with security personnel employed through/by Allen Iverson. Zanzibar owners and security manager stated that Zanzibar security generally will coordinate with celebrity security to accomplish the joint mission of security for all concerned. Mr. Daley stated that they would never allow celebrity security to control any area inside the Zanzibar exclusive of Zanzibar security. That is evidenced through statements and deposition testimony indicating that Zanzibar security personnel and management accessed the Iverson restricted area regularly on the night of this incident.

There is evidence that a Zanzibar owner was initially denied access to the area by an Iverson security officer who did not know the owner's identity. That is a common occurrence. A security officer should never admit an unknown person simply because the person says "I'm the owner." The correct procedure is to positively identify the person prior to admittance. Once his identity was verified, the Zanzibar owner was immediately admitted into the restricted area.

Though there is no evidence to suggest that security in the Zanzibar Sky Club was entirely delegated to Iverson, to suggest that a celebrity may not control an exclusive area within an establishment is not in keeping with generally established industry standards. The best example is that of a celebrity entertainer in a concert setting. Although the facility, such as a public coliseum, may have its own internal security force, there are areas that are restricted to the public and areas that may be restricted and controlled solely by the entertainer's security team. In such events it is not uncommon for the celebrity security team to prohibit even facility security personnel from admittance. It is not uncommon for similar security procedures to be applied to a nightclub setting.

There is no evidence that any other area within the Zanzibar establishment was controlled by any member of the Iverson security team. Further, as related above, there is no evidence that Zanzibar relinquished or abdicated security responsibilities in any way to the Iverson security team for the area set aside for the Iverson party.

My next examination pertained to the actual event in which Mr. Broady was alleged to have been assaulted. Ignoring the fact that Mr. Broady's account of the circumstances is contradicted by his

5

companions, and there were no corroborating witnesses, it seems clear that Mr. Broady left the restricted area and was later denied reentry.

Mr. Broady clearly states that the reason for the denial was that the area was overcrowded. In his deposition testimony and his statement of August 16, 2005, Broady states that he was told by a an unknown security officer:

> ...he was very polite – He said, "Sir, there's too many people in [the] area. Let me go get your cell phone. Stay right here. I'll be right back." (Stmt pg 3) and

> "I showed him my band. He said, yes, that is the band to get in, but there is too many people over there."

It seems clear that the reason for denial to the area was because of an overcrowding situation.

companions, and there were no corroborating witnesses, it seems clear that Mr. Broady left the restricted area and was later denied reentry.

Mr. Broady clearly states that the reason for the denial was that the area was overcrowded. In his deposition testimony and his statement of August 16, 2005, Broady states that he was told by a an unknown security officer:

> ...he was very polite – He said, "Sir, there's too many people in [the] area. Let me go get your cell phone. Stay right here. I'll be right back." (Stmt pg 3) and

> "I showed him my band. He said, yes, that is the band to get in, but there is too many people over there."

It seems clear that the reason for denial to the area was because of an overcrowding situation. Had the security officer admitted Mr. Broady into the area under those circumstances, it would have been a serious breach of security protocol. The actions taken by the security officer were correct and in keeping with security industry standards.

The next action by Mr. Broady is unclear. Broady states that he was fully cooperative and was struck by the Iverson security officer without warning. During his statement and deposition testimony I noted that Mr. Broady acknowledges being told at least five times to "back off" or "get off me" by the Iverson security officer. Broady further states that there was a very large crowd trying to enter the restricted area and that there was "pushing and shoving" as the crowd attempted entry and the security officer prohibited entry. This is further corroborated by Ms. McDaniel's statement. It is unclear how Mr. Broady was able to circumvent the crowd and approach the security officer directly but there is a clear implication that he was insistent that he be allowed entry past the Iverson Security officer.

It appears that a second security officer told Mr. Broady that he [the security officer] would make the necessary notification and retrieve the cell phone telling Broady to "wait right there. I'll be right back."

Rather than following the instructions, it appears that Broady attempted by pass the Iverson officer to intervene and give further directions to the second security officer. Stating "So I went and pointed to tell him no, it was the other direction, and as I dropped my hand, I looked out my peripheral vision and seen someone swinging at me," it appears that Broady gave some animated directions using his hand or arm in front of the Iverson guard. One can only speculate as to any interpretation of such action by the guard.

With one security officer inside the restricted area, and the other stating that he could not leave his assigned position, it seems reasonable, to a certain degree of certainty, that if he was assaulted in the manner claimed, it could have only been by the first Iverson security officer.

Following the claimed altercation between himself and the Iverson security guard, I saw no evidence that Mr. Broady was ejected from the Zanzibar nightclub. Mr. Broady stated that a witness identified only as "Nate" saw him taken to the Sky Club elevator by two unknown

security officers. He remembers finding himself on the elevator and deciding to go to the garage to use his other cell phone. There is no mention or indication by Mr. Broady that he was ejected from Zanzibar's or that there was even a Zanzibar employee or security officer present in the elevator.

Finally, it is well known in both private/proprietary security and in public law enforcement that It is not possible to prevent all crimes. It is not uncommon for crimes to be committed with security or police officers actually present. These are referred to as sudden unexpected occurrences and recognized as not foreseeable or preventable offenses.

In the case of private security, one has to examine the circumstances of the event and the circumstances leading up to the event in order to determine if a particular event was reasonably foreseeable and thereby reasonably preventable. In this case, I know of no valid evidence that the mere presence of a celebrity figure in a nightclub setting results in an increase in crime or lead a reasonable person to believe that such a presence would be an indicator of a future assault.

In this case, I looked to see if there was any prior knowledge on the part of Zanzibar owners, management, or security staff suggesting that the presence of Allen Iverson or his security staff would increase the possibility of a criminal assault. I found no such evidence.

Zanzibar owner Michel Daley stated that he had no adverse knowledge of Allen Iverson or his security team prior to this incident date. There is no mention by Zanzibar owner Darien Green of any adverse knowledge of Allen Iverson or his security team prior to this incident date. Zanzibar Owner/Manager Ola Olasehinde stated that he has never seen the Iverson security team, known as the "Four Horsemen," act aggressively or hit anyone. There was no mention by Zanzibar Security Manager Wendall Evans of any adverse knowledge of Allen Iverson or his security team prior to this incident date. In fact, Allen Iverson, along with his security team had been to the Zanzibar on at least one prior occasion without incident.

In terms of force used by an unprofessional private bodyguard, in the book The Nightclub, Bar, and Restaurant Security Handbook, the author writes "if the bodyguard injures a guest or gets his client hurt, it will not be your [the nightclub's] fault; yet your club will receive bad publicity and possibly a lawsuit." Mr. Broady describes the assault as an unexpected event. If the assault against Gregory Broady happened exactly as described by him, it was a sudden, unexpected incident that could not have been reasonably foreseen or prevented by Zanzibar owners, managers, or security personnel.

This concludes my findings and opinions in this case based on examination of documents to this date. I respectfully reserve the right to modify my opinions based on the receipt and examination of additional information.

*[signature]*　　　　　　　　　　　　　　　　　　　　6-21-2007
William T. Gaut　　　　　　　　　　　　　　　　　　　Date

7

Attachment #1

# CURRICULUM VITAE

William T. Gaut
9063 Autumn Haze Drive
Naples, FL 34109-1501
Phone: 239-593-8033
E-Mail: wtgaut@aol.com

## Professional Experience:

Current  **Legal Consultant/Expert Witness**
Working in the fields of Criminal Justice and Security.

1997-1999  **Adjunct Professor** (Jefferson State Community College; Birmingham, AL)

Teaching the following subjects:
- Criminal Law
- Homicide Investigation
- Fundamentals of Criminal Investigation
- Fundamentals of Criminal Justice (Police Practices and Procedures)

1994-1997  **General Manager/CEO** (RaDiUs/Jasper Motorsports, Inc.; Denver, NC)

Business Manager and CEO of this NASCAR Racing organization. Managed the daily operations of the corporation including Screening/hiring of personnel, Purchasing, Accounts Payable, Accounts Receivable, Payroll, and Marketing. Supervised the daily activities of 35 employees.

1992-1994  **Administrator/Director** (Jefferson County District Attorney=s Special Services Division; Birmingham, AL)

Designed and performed the initial public research project to determine the Aneed@ and wrote the organization=s Daily Operations Procedures. Screened/hired the clerical and investigative staff. Administered the division=s daily operations including Purchasing, Accounts Payable, Accounts Receivable, Payroll, Case/Trial Preparation, Case Filing System, Courtroom Litigation, Computer System Design and Marketing. The Special Services Division specialized in the investigation, prosecution, and recovery of worthless checks, fraud, embezzlement and related white-collar financial crimes. Budget: $750,000.00. Recovered funds: $2 Million Annually

1968-1992  **Captain of Detectives** (Birmingham Police Department; Birmingham, AL)

    Uniform Patrol Division

  Police Academy Instructor (Sergeant)

      Assisted in the development and implementation of the Alabama Minimum Standards & Training Commission Curriculum, Policies and Procedures.

  Detective Sergeant - Homicide Division

      Lead investigator for literally hundreds of major felony cases of Homicide, Rape, Felony Assault, and Kidnapping.

  Lieutenant - Chief=s Administrative Staff

      Supervised the ABusiness@ aspect of the department including purchasing of daily supplies and equipment, Preparation/Implementation/Control of the annual $36 million budget, and Departmental Inspections. Responsibilities included licensing, inspection and supervision of City Emergency Medical respondents.

      Coordinated the Departmental Accreditation activities.

  Captain - Precinct Commander (East & North Precincts)

      Supervised the daily activities of 90-120 officers.

  Detective Captain (Detective Division Commander)

      Supervised the activities of 130 investigators.

## Other Professional Experience:

1972-1990    Security Training Institute, Inc.

    CEO and majority stockholder of this multi-state Subchapter S Corporation, which was approved by the States of Alabama and Louisiana. STI specialized in the training and certification of private and proprietary security guards and security management. The organization provided certified security training for virtually every industry including but not limited to Hotels, Manufacturing, Banking, Private Security, Food Service, Retail Department Stores, Public Police Officers, Public Utilities, Shopping Malls, and Major Universities.

1985-1999    I have accepted Investigative/Expert Witness cases for attorneys including civil/criminal investigation, civil wrongful death, homicide, premise liability,

security operations evaluations, and Police Practices & Procedures.

1972-1992   I have regularly taught at the Birmingham Police Academy in the fields of Homicide Investigation, Criminal Investigation, Police Management, Emergency Response, and Fundamentals of Law Enforcement.

I have lectured in the fields of Criminal Justice, Security Fundamentals and Business Management at the following Universities:

>    University of Alabama
>    University of Alabama-Birmingham
>    Birmingham Southern College
>    Auburn University
>    Jefferson State Community College
>    Samford University

## Education:

- AA   Law Enforcement
       Jefferson State Community College

- BS   Criminal Justice
       University of Alabama-Birmingham

- MA   Public & Private Management (i.e. MPA/MBA)
       Birmingham Southern College

- PhD  Working toward Doctor of Philosophy in Business Administration
       With emphasis in Criminal Justice
       Completed 36 of 81 required hours as of 6/1/2007
       North Central University

## Certifications & Memberships:

Certified (Level III) Forensic Medical Investigator
Certified Forensic Consultant
Certified Police Academy Instructor (Former Designation by the State of Alabama)

Member American Society of Industrial Security (ASIS)
Member American Academy of Forensic Sciences
Member American College of Forensic Examiners

Attachment #2

| Year | Attorney | Address | City | ST | Zip | Phone | Style | Court | Client | Opinion | Depo | Trial | Case Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2003 | Thomas Wilson | 607 E. Adams Street | Springville | IL | 62705 | 217-544-1144 | Mutual Medical v Lyons | Fed | Plaintiff | yes | | | 01-1469 |
| 2003 | Jeffrey Ditmer | 20 E. Broad Street | Columbus | OH | 43215 | 614-228-5822 | Burke v SMG | State | Plaintiff | yes | | | 01CVC10-10794 |
| 2003 | Steven Kronic | 2655 Lejeune Road, #1108 | Coral Gables | FL | 33134 | 305-443-3329 | Singletary v Wal Mart | State | Plaintiff | yes | | | Unknown |
| 2003 | Albert Bacharach, Jr. | 115 N.E. 6th Avenue | Gainesville | FL | 32601 | 352-378-9859 | Webb v Gainesville | Fed | Plaintiff | yes | | | 1:03-CV-87-MMP |
| 2004 | Dennis Stefanowicz | 30 S. Wacker Drive | Chicago | IL | 60606 | 312-258-9700 | Britton v Chicago | State | Plaintiff | yes | | | 01-009612 |
| 2004 | Anne Toale | 2480 Fruitville Road, Ste 6 | Sarasota | FL | 34237 | 941-952-5242 | Carroll v Red Barn | State | Plaintiff | yes | | yes | 2003CA003666NC |
| 2004 | William Kratochvil | 13751 Metropolis Ave | Ft. Myers | FL | 33912 | 239-337-7787 | Harris v Rodriguez | Fed | Defendant | yes | no | | 2:03CV657FTM29SPC |
| 2005 | Christoa Lagos | 3225 Aviation Ave, Ste 600 | Miami | FL | 33133 | 888-930-2500 | Smith v Almonte | State | Plaintiff | yes | no | | 02-3888 CA 04 |
| 2005 | Charles McDonald | 4150 Rio Bravo Drive | El Paso | TX | 79902 | 915-545-2300 | Texas v Justen Hall | State | Defendant | yes | | | 20030D00505 |
| 2005 | Scott A. Orth | 1183 71st Street | Miami Beach | FL | 33141 | 305-993-1200 | Anderson v Tobacco Road | State | Plaintiff | yes | yes | yes | 01-27159 CA 05 |
| 2005 | Adam Jones | P.O. Box 1649 | Dothan | AL | 36302 | 334-792-1420 | Stovall v Allums & City of Dothan | State | Plaintiff | yes | | | CV2004659 |
| 2005 | Bryan S. Blackwell | 279 West Main Street | Dothan | AL | 36301 | 334-678-7780 | Strickland v City of Dothan | State | Plaintiff | yes | | | 1:04cv1045-T |
| 2006 | H. Lawrence Perry | 432 McKenzie Avenue | Panama City | FL | 32401 | 850-784-9000 | Wilson v Regency Towers | Fed | Defendant | yes | | | 02-2965CA |
| 2006 | Andrew W. Lennox | 980 Tyrone Boulevard | St. Petersburg | FL | 33743 | 727-380-2300 | State of Florida v Roos | State | Defendant | yes | | | Criminal Case |
| 2006 | Bob Gingras | 8150 Excelsior Drive | Madison | WI | 53701 | 608-833-2632 | Galster v. City of Portage | Fed | Plaintiff | yes | | | 05-C-0673-S |
| 2006 | David H. Charlip, Esq | 1930 Harrison St., Ste. 208 | Hollywood | FL | 33020 | 954-921-2131 | Feilu v Rundle | Fed | Plaintiff | yes | | | 05-20169-CIV-Hoevele |
| 2006 | Patrick R. Frank | 1882 Capital Circle N.E. | Tallahassee | FL | 32308 | 850-386-5300 | Washington v Tallahassee | Fed | Plaintiff | yes | yes | yes | Unknown |
| 2006 | Randy James | 2008 3rd Avenue South | Birmingham | AL | 35233 | 205-271-1100 | Shewerman v City of Huntsville | Fed | Plaintiff | yes | | | CV-05-S-0843-NE |
| 2006 | Ronald T. Spriggs | 1011 S. Jackson Street | Amarillo | TX | 79101 | 806-376-7260 | Sanchez v Vennell/Davis | Fed | Plaintiff | yes | | | 2-06CV-047-J |
| 2006 | Marvin Pastel | 3405 Piedmont Rd NE #300 | Atlanta | GA | 30305 | 404-591-6302 | Bujeda v Gray | Fed | Plaintiff | yes | yes | yes | 3:04CV/1095J99MCR |
| 2006 | John Fuson | 1201 Pennsylvania Ave NW | Washington | DC | 20004 | 202-662-5314 | Smith v State of Alabama | Fed | Defendant | yes | yes | yes | CC-85-200104 |
| 2006 | Martin Sabelli | 555 Seventh Street | San Francisco | CA | 94103 | 415-553-1671 | People v. David Hill | State | Defendant | yes | yes | yes | SCN 2159246 |
| 2007 | David Azar | 5920 South A1A, Suite 101 | Melbourne Bch | FL | 32851 | 321-728-8646 | Oracki v Enterprise Leasing | State | Plaintiff | yes | | | 05-2002-CA-9068 |
| 2007 | Robert I. Reardon | 160 Hempstead Street | New London | CT | 06320 | 860-442-0444 | Kaya v. New London | Fed | Plaintiff | yes | | | 3:05-CV-01436 (JCH) |
| 2007 | Lt. Col. Matt Cord | 2015 South Home St. | Oceanside | CA | 92054 | 760-725-4016 | NCIS v Lt. Nathan Phan | US MIL | Defendant | yes | | yes | Unknown |
| 2007 | Caroline A. Adams | 777 S. Harbour Island Blvd | Tampa | FL | 33602 | 813-281-1900 | Dunn v Flying J | State | Plaintiff | yes | | yes | 51-2005-CA3515-ES |
| 2007 | David Azar | 5920 South A1A, Suite 101 | Melbourne Bch | FL | 32851 | 321-728-8646 | Oracki v Siggy's Bar | State | Plaintiff | yes | yes | yes | 05-2002-CA-9068 |
| 2007 | Benjamin Crump | 240 N. Magnolia Drive | Tallahassee | FL | 32301 | 850-222-3333 | Anderson v Bay County S O | Fed | Plaintiff | yes | yes | yes | Florida Senate |
| 2007 | Benjamin O. Nwoye | 203 N. Wabash Avenue | Chicago | IL | 60601 | 312-658-1660 | Uwumarogie v. Vlg of Glen Ellyn | Fed | Plaintiff | yes | | | 06-C-2628 |

11