UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY BROADY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ZANZIBAR ON THE WATERFRONT, LLC, )<br>et al. )<br>)<br>Defendants. ) | Case No. 1:06-cv-00792-CKK |

**PLAINTIFF'S OPPOSITION TO DEFENDANT
ALLEN IVERSON'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Gregory Broady, by and through counsel, and files this, his Opposition to Defendant Allen Iverson's Motion for Summary Judgment, and hereby moves for an Order, herein attached, denying the Motion for Summary Judgment in favor of the defendant, Allen Iverson. In support, the plaintiff, Gregory Broady, submits his Statement of Material Facts in dispute and Memorandum of Points and Authorities, and supporting documents.

Respectfully submitted,

Dated: February 5, 2008

TINA L. SNEE & ASSOCIATES, PLLC

_/s/ TS_____
Tina L. Snee, Esq (DCB 416191)
9401 Lee Highway, Suite 206
Fairfax, VA 22031
(703) 352-8833
(703) 352-8881 (fax)

# TABLE OF CONTENTS

|  |  | **Page No.** |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| TABLE OF EXHIBITS | | iii |
| I. | STATEMENT OF RELEVANT FACTS | 2 |
| II. | ARGUMENT | 5 |
| | A. Facts viewed in a light most favorable to Gregory Broady establish apparent authority | 5 |
| | B. Allen Iverson is responsible for the acts of John Doe guard. | 7 |
| | C. Allen Iverson failed to supervise John Doe | 10 |
| III. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page No.**

Ames v. Yellow Cab of DC, Inc., 2006 U.S. Dist. LEXIS 67788 (D.D.C. 2006)         10

Breen v. DOT, 282 F.3d 839 (D.C. Circuit 2002) .................................................   1

Daka v. McCrae, 839 A.2nd 682, (D.C. 2003) ......................................................  12

Edwards v. Okie Dokie, Inc., 473 F.Supp.2d 31 (D.D.C. 2007) ...........................  12

Fry v. Diamond Construction, Inc., 659 A.2d 241 (D.C. 1995) ...........................  11

Godfrey, et al v. Allen Iverson, et al, 2007 U.S. Dist. LEXIS 64705
(D.D.C. 2007).........................................................................................................  Exhibit 9

Griffin v. Acacia Life Insurance Co., 925 A.2d 564 (D.C. 2007) .........................  11

Hummer v. Levin, 673 A.2d 631 (D.C. 1996) ......................................................   8

Jack Pry, Inc. v. Drazin, 173 A.2d 222, (D.C. 1961) ............................................   5

Murphy v. The Army Distaff Foundation, Inc., 458 A.2d 61, 63 (D.C. 1983) ......  12

Novak, et al v. Capital Management, et al, 2004 U.S. Dist. LEXIS 29867
(D.D.C. 2004) ........................................................................................................  1, 10

Safeway Stores, Inc. v. Gibson, 237 F.2d 592 (D.C. Cir. 1956) ............................   8

Safeway Stores, Inc. v. Kelly, 448 A.2d 856, (D.C. 1982) ....................................   8

Schecter v. Merchants Home Delivery, Inc., 892 A.2d 415 (D.C. 2006) ...............   9

TEL-ADS, Inc. v. Trans-Lux Playhouse, Inc., 232 F.Supp. 198 (D.D.C. 1964) .....   6

Waterhouse v. District of Columbia, 298 F.3d 989 (D.C. Circuit 2002); ...............   1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ..............................................................................................   1

Restatement (Second of Agency) § 213 ................................................................  11

## LIST OF EXHIBITS

EXHIBIT 1       Zanzibar (30)(B)(6) Deposition

EXHIBIT 2       Daley Drawing

EXHIBIT 3       Zanzibar's Interrogatory Answer No. 10

EXHIBIT 4       Olasehinde Deposition

EXHIBIT 5       William Gaut Report

EXHIBIT 6       Norman Bates Report

EXHIBIT 7       Wendall Evans Deposition

EXHIBIT 8       Iverson Affidavit

EXHIBIT 9       Memorandum Opinion and Order 9/4/07 in Godfrey, et al v. Allen Iverson, et al, 2007 U.S. Dist. LEXIS 64705 (D.D.C. 2007)

EXHIBIT 10      Broady Deposition

EXHIBIT 11      Broady Affidavit

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY BROADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:06-cv-00792-CKK |
| | ) |
| ZANZIBAR ON THE WATERFRONT, LLC, | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT
ALLEN IVERSON'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the plaintiff, Gregory Broady, by and through counsel, and files this, his Opposition to the Motion for Summary Judgment, and in support thereof, states as follows:

Summary judgment is not appropriate as there is a genuine issue as to the material facts. In viewing the evidence in a light most favorable to the plaintiff Broady, the Motion for Summary Judgment fails. Pursuant to Fed. R. Civ. P. 56(c), "Summary judgment is appropriate only if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. The evidence must be viewed in the evidence in a light most favorable to the non-moving party. Breen v. DOT, 282 F.3d 839 (D.C. Circuit 2002). Further, any and all reasonable inferences in the non-moving party's favor are to be drawn in reaching a determination. Waterhouse v. District of Columbia, 298 F.3d 989 (D.C. Circuit 2002); Novak, et al v. Capital Management, et al, 2004 U.S. Dist. LEXIS 29867 (D.D.C. 2004).

The events of June 4, 2004 establish John Doe was acting as an agent/employee with apparent authority of Allen Iverson. Further, when John Doe struck Gregory Broady with two

blows to the head knocking him unconscious and causing a subsequent subdural hematoma, it was within the scope of authority in furtherance of his responsibilities for Allen Iverson. Allen Iverson was aware of the actions of John Doe prior to the beating of Gregory Broady. He could see and observe the pushing, shoving and aggressive behavior conducted on other Zanzibar patrons, as well as the owner of Zanzibar. Allen Iverson was negligent in his supervision in failing to stop or curtail the actions of John Doe, and in fact, ratified John Doe's outrageous conduct by stating to the owner of Zanzibar after the assault that if "John Doe has to go, then I go." Zanzibar personnel allowed them both to stay. The law in the District of Columbia does not allow Allen Iverson to anoint John Doe with authority, watch John Doe's action, and condone it when he assaults an innocent victim, and then claim no responsibility. Therefore, as a matter of fact and law, Allen Iverson's Motion for Summary Judgment should be denied.

## I.   STATEMENT OF RELEVANT FACTS

Gregory Broady was at Zanzibar on the Waterfront on June 4, 2004. He was on the third level, which is alternatively called the VIP or Sky Club area. Zanzibar on the Waterfront, that evening, was being managed by one of its owners, Michel Daley. Allen Iverson had been to Zanzibar on a prior occasion with security guards, who were described as large NFL linebackers, who were aggressive. These same guards accompanied Allen Iverson on June 4, 2004 to Zanzibar on the Waterfront.[1] Allen Iverson and the four security guards were taken up to the Sky Club area, where on behalf of Allen Iverson, they began controlling the Sky Club in the section known as the M.J. or Michael Jordan room. Michel Daley went up to the Sky Club,

---

[1] Exhibit 1 - Pages 49, 55, 62

where he found Allen Iverson in the Michael Jordan room, which he described as approximately 30' by 60', which is partially secluded from the rest of the Sky Club. He noted four Allen Iverson guards present and controlling that area of Zanzibar.[2] The Iverson guards were furthering the interest of Allen Iverson by keeping part of the space clear and free for Allen Iverson and those patrons he wished to allow near him.

Michel Daley was in the Sky Club for approximately thirty minutes, and observed the guards acting aggressively, pushing and shoving other patrons of Zanzibar, and keeping them away from both Allen Iverson and the Michael Jordan room. In fact, Michel Daley had to approach the John Doe guard to be presented to Allen Iverson. The guard initially indicated that Michael Daley could not go in and see Allen Iverson. Michel Daley calls it when "a incident occurred", but that he then went and got his guard and was permitted back to see Allen Iverson. While Michel Daley was trying to gain entrance to the Michael Jordan room to speak to Allen Iverson, he observed that Allen Iverson controlled who was allowed entrance into the Michel Jordan room. It was his observation that Allen Iverson informed the guards or permitted the guards to let back women patrons as opposed to men.[3]

Gregory Broady had been in the Sky Club prior to the appearance of Allen Iverson and the guards. The guards and Allen Iverson appeared at the same time. Although he did not know if the guards had been hired by Zanzibar or Allen Iverson, it was obvious that they were there for the protection of Allen Iverson, and not Zanzibar.[4] Gregory Broady had been given a "band" by

---

[2] Exhibit 5; Exhibit 1 - Page 62; Michel Daley deposition.

[3] Exhibit 1 - Pages 55-62, 101, 106.

[4] Exhibit 11

3

an owner of Zanzibar to permit him to be in the Sky Club that night. Once in the Sky Club, he was to have access to all portions of the Sky Club, including the Michael Jordan room. According to the testimony of Michael Daley, even if Allen Iverson was in the Sky Club, a patron with an arm band would be accommodated in the Sky Club.[5]

Broady relied on the authority placed by Allen Iverson on his guards to try to regain entrance to the Michael Jordan room where he had been sitting with some friends and where he had left his cell phone. He was aware the guards, on behalf of Allen Iverson, were now determining who could exit and/or enter from that portion of the Sky Club. He, too, noted the guards were pushing and shoving patrons, and determining who was allowed entrance. He also observed Allen Iverson was very close, and that he could see Allen Iverson. Mr. Broady was forced to speak to the guard in order to gain entrance back to the portion of the area that Allen Iverson was controlling.[6] There was no doubt that they were acting under the authority and as agents, in furtherance of Allen Iverson's interests in controlling the area and access into the Michael Jordan room. Although Greg Broady showed the arm band and indicated that he had been in the secluded area previously, he was not permitted in and referred to another guard. It was while directing this other guard to where he had been seated that John Doe, the guard for Allen Iverson, struck him twice to the head, knocking him unconscious. It is undisputed he was struck by an Allen Iverson guard.[7]

---

[5] Exhibit 1 - Page 104.

[7] Exhibit 5 - Page 5; Exhibit 10 - Pages 119-123.

4

Michel Daley, who was not at the Sky Club when the confrontation occurred, did hear about the confrontation, and that Allen Iverson's guards had roughed up one of the patrons. When Allen Iverson's guards were confronted, it was Allen Iverson who intervened and indicated, "If he has to go, I go." Zanzibar allowed both to stay.[8] Allen Iverson has not disputed the guards were acting as his agents, and has presented no facts to dispute the relationship.[9] Allen Iverson has agreed he will not testify, as he would not provide a deposition.

Gregory Broady, as a result of the blows, suffered a subdural hematoma and later required a "brain drain", to relieve the pressure, and incurred pain and suffering, lost wages, and medical expenses.

## II.   ARGUMENT

### A.   Facts viewed in a light most favorable to Greg Broady establish apparent authority

Apparent authority rests essentially on the theory of estoppel. The estoppel occurs when the principal places his agent in a position which would cause a third party a reasonable belief the principal had consented to the exercise of authority by the agent. The apparent authority arises when the principal (Iverson) places the agent (John Doe), in such a position as to mislead Gregory Broady into believing that agent is clothed with the authority which, in fact, he does not possess. Jack Pry, Inc. v. Drazin, 173 A.2d 222, (D.C. 1961). Where one person knowingly permits another, without objection to represent him, or puts the other in a situation which indicates to those who deal with him that he holds a certain authority, the former is estopped

---

[8] Broady Deposition, Exhibit 10

[9] Godfrey v. Iverson case - Exhibit 9

5

from asserting, against those who relied upon the appearance of power thus permitted or given, that the putative agent was not acting within the actual limit of his authority. TEL-ADS, Inc. v. Trans-Lux Playhouse, Inc., 232 F.Supp. 198 (D.D.C. 1964). Allen Iverson granted John Doe the authority to determine who could enter or leave the Michael Jordan room. Both Michel Daley and Gregory Broady noted and relied on the fact that Allen Iverson was directing the guard to determine what patrons were allowed to get near Allen Iverson, and which ones were excluded from entering the Michael Jordan room. Gregory Broady relied on the authority given by Allen Iverson to the guard by approaching the guard to re-enter the room.

Allen Iverson had the power and opportunity to restrict the guards' actions and aggressive mannerisms, and did not. Allen Iverson took no steps or actions on the evening in question to inform Gregory Broady, any other patrons, or Zanzibar, that the John Doe guard was not acting on behalf of Allen Iverson. In fact, he ratified the acts of the guard in striking Gregory Broady by indicating, "If he has to go, I go."

The defendant argues there is no apparent authority because Gregory Broady did not know who the guard was "working for". However, it was clear to Gregory Broady, Michel Daley, and Cynthia Denise McDaniel, that John Doe's actions were on behalf of Allen Iverson in providing security for Allen Iverson, secluding Allen Iverson in part of the Sky Club, and allowing Allen Iverson to determine who entered or exited that portion of the club.[10] In fact, according to Zanzibar's expert, Dr. Gaut, Allen Iverson guards, including John Doe, had taken over an exclusive area within the establishment, and that was acceptable for celebrity guards to

---

[10] Exhibit 11.

do.[11]  Since Iverson's guards had taken over that area, Gregory Broady relied on the guard working on behalf of Iverson to regain admittance to the portion of the bar where he had been sitting prior to going to the restroom.  That reliance clearly was to his detriment, as he was struck repeatedly by the Iverson guard without any actions on his own behalf to cause it, other than to point out where he had been sitting, and he was wearing the proper band given to him by the Zanzibar owner.

Allen Iverson held John Doe out to numerous individuals, including Greg Broady, on the evening in question, as his agent, employee, and that John Doe was vested with the authority, through Allen Iverson, to hold back and/or allow access to patrons of Zanzibar.  The apparent authority granted to John Doe by Allen Iverson was a direct and proximate cause of the damage to Gregory Broady.

**B.     Allen Iverson is responsible for the acts of the John Doe guard.**

Allen Iverson has never stated that he was not at Zanzibar on the night of the incident. Allen Iverson has never stated that he did not have security guards present.  Allen Iverson has never stated that he did not pay the guards.  Allen Iverson has never testified or provided evidence that he did not have the power to discharge or control the conduct of the guards. However, Allen Iverson has testified that he retained guards when he was in the Washington, DC area. The general meaning of the word "retained" would infer that money was transferred.  He further testified in regard to the words "my security", which would indicated they were under his

---

[11] Exhibit 5.

control.[12] Further, Allen Iverson had agreed that security guards hired on his behalf were agents in a similar bar fight which occurred subsequent to this action.[13] The District of Columbia has dealt with similar cases where principals contend that security guards are independent contractors acting on their own accord, and not agents or employees. Safeway Stores, Inc. v. Kelly, 448 A.2d 856, (D.C. 1982); Safeway Stores, Inc. v. Gibson, 237 F.2d 592 (D.C. Cir. 1956). In these cases, Safeway Stores, Inc. retained independent contractors from a security business to patrol the Safeway stores. The Court determined that the guards were actually employees of Safeway, based on the following factors:

1. The store could determine which people the guards should investigate;

2. The store could terminate the guard service whenever it chose;

3. The agency had no specific job or piece of work to perform.

The circumstances at Safeway are similar to the guards working for Allen Iverson. In the case at bar, the guards were hired when Allen Iverson was in the District of Columbia area and went out. Allen Iverson could terminate the service, and in fact, only elected the service when in the District of Columbia area. Finally, and most importantly, Allen Iverson directed the guards as to whom the guards should allow in or whom they should exclude. Allen Iverson controlled those actions, and did so on the night in question by informing the guards whom should be permitted back into the Michael Jordan room.

---

[12] The affidavit of Allen Iverson does not provide positive testimony that he did not see or hear, or was not present, only that he could not recall. That is not equal to positive evidence or positive facts that need to be refuted. Hummer v. Levin; 673 A.2d 631 (D.C. 1996).

[13] Exhibit 9.

Further, when the guard struck Gregory Broady, he was doing it in the furtherance of the interest of Allen Iverson. The guards were acting as security for Allen Iverson in restricting the flow of individuals. The guard used excessive force against Gregory Broady in breach of the standard of care. However, it was in the furtherance of the interest of Allen Iverson.

In determining whether the conduct of the guard was within Allen Iverson's scope of employment, the case of <u>Schecter v. Merchants Home Delivery, Inc.</u>, 892 A.2d 415 (D.C. 2006) sets the following standards:

> a. it is of the kind he is employed to perform;
>
> b. It occurs substantially within the authorized time and space limits;
>
> c. It is actuated, *at least in part*, by purpose to serve the master; and
>
> d. If force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Here, the John Doe guard had been employed to perform guard services, and to restrict the access of patrons, and was doing so at the time of this occurrence. He was still performing those duties when he struck Gregory Broady. The striking of Gregory Broady, at least in part, was done for the purpose to serve Allen Iverson in keeping out Gregory Broady, not a woman, from the Michael Jordan area. Further, the force used by the John Doe guard was not totally unexpected by Allen Iverson. Allen Iverson had the time and opportunity, both that evening and on prior occurrences with these same guards, to note their aggressive behavior, as noted by Michel Daley and Gregory Broady. Allen Iverson was well aware that the guards were pushing

9

and shoving and using physical force to restrain patrons. Since he was on notice of the aggressive behavior, Allen Iverson was well aware that further aggressive and physical force may occur.[14]

### C.  Allen Iverson failed to supervise John Doe.

Allen Iverson was aware of John Doe's aggressive behalf before the night in question. However, he again retained John Doe when he returned to Zanzibar on June 4, 2004. While at Zanzibar, John Doe again acted in an aggressive manner towards patrons, as well as the owner of Zanzibar. During this time period Allen Iverson had the opportunity to see and/or restrict the conduct of John Doe, and failed to do so. Whether or not John Doe was an agent or employee, or an independent contractor, does not relieve Allen Iverson of the duty to supervise John Doe. In breach of that duty, Allen Iverson failed to supervise and restrict John Doe's activities, which continued to escalate in an aggressive behavior until the striking of Gregory Broady.

In Ames v. Yellow Cab of DC, Inc., 2006 U.S. Dist. LEXIS 67788 (D.D.C. 2006), it was determined Alcindore was not an agent or employee of Yellow Cab. However, it was established that though Alcindore was an independent contractor, Yellow Cab failed to supervise and could be found negligent for its negligent supervision.

---

[14] Novak, *supra*. Where a business owner who was aware of fisticuffs in the alley was on notice that a beating with a wooden board may occur.

The factors set out in Ames, set forth below, apply in this instance:

"The *Restatement (Second) of Agency § 213* defines negligent supervision as follows: "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: (a) in giving improper or ambiguous orders or in failing to make proper regulations; or (b) in the employment of improper persons or instrumentalities in work involving risk or harm to others; (c) in the supervision of the activity; or (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control."

Negligent supervision also places a duty on Allen Iverson to investigate and avert an existing peril of the aggressive behavior of John Doe. Fry v. Diamond Construction, Inc., 659 A.2d 241 (D.C. 1995).

Allen Iverson had the power, control and ability to supervise the John Doe guard. However, he failed to exercise and supervise the John Doe guard's aggressive behavior towards patrons that Allen Iverson did not wish to join him in the Michael Jordan room. This aggressive behavior became violent with the striking of Gregory Broady. The failure of Allen Iverson to supervise the John Doe guard was a direct and proximate result of the injuries. The law of the District of Columbia requires Allen Iverson to have taken action, and his failure to act and supervise the John Doe places responsibility at his feet.

> One dealing with the public is bound to use reasonable care to select employees competent and fit for the work assigned to them, and to refrain from retaining the services of an unfit employee." When an employer neglects this duty and as a result injuries occasion to a third person, the employer may be liable, even though the injury was brought about by the willful act of the employee beyond the scope of his employment. Griffin v. Acacia Life Insurance Co., 925 A.2d 564 (D.C. 2007).

Aside from the question of vicarious liability, Allen Iverson may be directly liable for his failure to exercise reasonable care to avoid harm under the circumstances. The employer's duty

to supervisor is not merely to be judged by the concept of *Respondeat Superior*. Murphy v. The Army Distaff Foundation, Inc., 458 A.2d 61, 63 (D.C. 1983).

Gregory Broady can establish that Allen Iverson was negligent in his supervision. It is clear from the testimony of several witnesses that the John Doe was acting in a dangerous and aggressive manner, and Allen Iverson knew or should have known, and failed to supervise John Doe or restrain him in any way. Daka v. McCrae, 839 A.2nd 682, (D.C. 2003).

Plaintiff's expert, Norman Bates, establishes that the actions taken by John Doe, acting as the agent of Iverson, used force which "under the circumstances was completely inappropriate." Defendant's reliance on Edwards v. Okie Dokie, Inc., 473 F.Supp.2d 31 (D.D.C. 2007) is misplaced as, there, plaintiff did not have any testimony on whether the manner the plaintiffs were "put down" was reasonable. Here, plaintiff's expert will state that the aggressive action in striking Gregory Broady was excessive force and not necessary.

### III. CONCLUSION

The uncontroverted facts establish that Allen Iverson placed the John Doe guard as his agent with apparent authority at the entrance of the Michael Jordan room. Further, that agent, acting on behalf of Allen Iverson, aggressively pushed and/or allowed in patrons, depending on Allen Iverson's whim. This guard became aggressive to the point of using excessive force and knocking Gregory Broady twice to the head, causing him to lose consciousness, and experience pain and suffering. The law and the facts establish the liability of Allen Iverson for the acts of John Doe.

WHEREFORE, the plaintiff moves that Allen Iverson's Motion for Summary Judgment be denied.

Respectfully submitted,

TINA L. SNEE & ASSOCIATES, PLLC

Dated: February 5, 2008

Tina L. Snee, Esquire
9401 Lee Highway, Suite 206
Fairfax, VA 22031
703-352-8833
Fax: 703-352-8881
Attorney for Plaintiff Gregory Broady