# EXHIBIT 9

Case 1:06-cv-00792-CKK   Document 27-12   Filed 02/05/2008   Page 2 of 4

Page 1

503 F. Supp. 2d 363, *; 2007 U.S. Dist. LEXIS 64705, **

1 of 99 DOCUMENTS

MARLIN GODFREY, et al., Plaintiffs, v. ALLEN IVERSON, et al., Defendants.

Civil Action No. 05-2044 (ESH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

503 F. Supp. 2d 363; 2007 U.S. Dist. LEXIS 64705

September 4, 2007, Decided

**SUBSEQUENT HISTORY:** Stay granted by *Godfrey v. Iverson*, 2007 U.S. Dist. LEXIS 76267 (D.D.C., Oct. 16, 2007)

**PRIOR HISTORY:** *Godfrey v. Iverson*, 2007 U.S. Dist. LEXIS 43269 (D.D.C., June 15, 2007)

**COUNSEL:** [**1] For MARLIN GODFREY, ANSLEY F. GRANT, CURTISS L. FITZGERALD, Plaintiffs: Edward Gregory Watson, LEAD ATTORNEY, WATSON & MORAN, LLC, Landover, MD; Gregory L. Lattimer, LEAD ATTORNEY, LAW OFFICES OF GREGORY L. LATTIMER, PLLC, Washington, DC; Stephanie Denae Moran, LEAD ATTORNEY, WATSON & MORAN, LLC, Landover, MD.

For ALLEN IVERSON, Defendant: Alan C. Milstein, LEAD ATTORNEY, SHERMAN SILVERSTEIN KOHL ROSE & PODOSKI, Pennsauken, NJ; William R. Martin, LEAD ATTORNEY, SUTHERLAND ASBILL & BRENNAN LLP, Washington, DC; David A. Rosenberg, FORD & HARRISON LLP, Washington, DC; Matthew A. Tucker, SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A., Pennsauken, NJ.

For JASON KANE, Defendant: Alan C. Milstein, LEAD ATTORNEY, SHERMAN SILVERSTEIN KOHL ROSE & PODOSKI, Pennsauken, NJ; Thomas R. Bundy, III, SUTHERLAND, ASBILL & BRENNAN, L.L.P., Washington, DC.

For GREGORY IVERSON, Defendant: William R. Martin, LEAD ATTORNEY, SUTHERLAND ASBILL & BRENNAN LLP, Washington, DC.

For CURTIS JACKSON, III, Defendant: Jacqueline Elizabeth Bennett, LEAD ATTORNEY, REED SMITH LLP, Washington, DC.

**JUDGES:** ELLEN SEGAL HUVELLE, United States District Judge.

**OPINION BY:** ELLEN SEGAL HUVELLE

**OPINION**

[*364] **MEMORANDUM OPINION AND ORDER**

This case was tried to a jury [**2] over six days in June and July 2007. Plaintiffs' claims arose out of a physical altercation that took place at the Eyebar nightclub in Washington, D.C. in July 2005. After approximately two and a half days of deliberations, the jury returned a verdict against defendant Jason Kane for intentional infliction of emotional distress and assault and battery as to plaintiff Marlin Godfrey. The jury also returned a verdict for Godfrey against defendant Allen Iverson for the negligent supervision of Kane. Godfrey was awarded $ 260,000 in compensatory damages, including $ 10,000 for medical expenses and $ 250,000 for pain and suffering, but the jury declined to award punitive damages.

Defendants now move for judgment as a matter of law, or alternatively for a new trial, arguing, *inter alia*, that the Court made a number of erroneous evidentiary rulings and improperly instructed the jury. Defendants have also moved in the alternative for remittitur, and they request that the jury's award of damages, which they claim is excessive, be reduced to an amount not greater than $ 31,200.

Defendants argue that the evidence showed that plaintiff Godfrey's "only medical expenses included co-payments and drug [**3] store receipts totaling $ 1,200," and that the jury's award of $ 10,000 for medical expenses is therefore not supported by the record. (Defs.' Mot. for Remittitur at 4-5, 8.) In reaching their $ 1,200 figure, defendants appear to exclude the medical expenses for which Godfrey may have been reimbursed by his health insurance carrier. (*See, e.g.*, Pl.'s Ex. 2a

Case 1:06-cv-00792-CKK    Document 27-12    Filed 02/05/2008    Page 3 of 4

Page 2

503 F. Supp. 2d 363, *; 2007 U.S. Dist. LEXIS 64705, **

[invoice from George Washington Hospital showing $ 5,338 balance]; *id.* [invoice [*365] from Medical Faculty Assocs. showing $ 1,226 in charges].) However, it well established under the collateral source rule that "payments to the injured party from a collateral source are not allowed to diminish damages recoverable from the tortfeasor." *Hardi v. Mezzanotte, 818 A.2d 974, 984 (D.C. 2003)*. Because the medical bills in evidence, as to which defendants did not object at trial, support the jury's $ 10,000 award, the Court will not disturb their verdict. Furthermore, the jury's award of $ 250,000 for pain and suffering is not unreasonable in light of the evidence presented at trial regarding the seriousness of Godfrey's injuries, which included a ruptured ear drum, lacerations, a ruptured blood vessel in his eye, and a torn rotator cuff. Accordingly, [**4] defendants' motion for remittitur must be denied.

Defendants also argue that the Court failed to properly instruct the jury on the law of battery and negligent supervision. (Defs.' Mot. for New Trial at 14-15, 17.) Because defendants did not object to these portions of the instructions before the case went to the jury (*see* July 5, 2007 a.m. Tr. at 6:13-8:21), the Court may only consider whether its instructions constituted "plain error . . . affecting substantial rights." *Fed. R. Civ. P. 51(d)*. None of the contested instructions rise to this level. For example, the battery instruction that defendants now criticize (*see* Defs.' Mot. for New Trial at 15) was given essentially verbatim from the District of Columbia's standard jury instructions, *see STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA § 19.03 (2006)*, and defendants themselves *requested* that this very instruction be given. [1] (*See* Joint Pretrial Statement [Dkt. # 68] Attachment 2 [Defendants' Proposed Jury Instructions] at 8 ("Defendants rely on the District of Columbia standard jury instructions for assault and battery.").) Defendants also argue that the Court erred with respect to the claim against Iverson for [**5] the negligent supervision of Kane by failing to instruct the jury on "the necessary element[s] of duty or causation." (Defs.' Mot. for New Trial at 17.) As a matter of law, a principal has a duty to supervise his agent with reasonable care once he knows or has reason to know that such a person has "behaved in a dangerous or otherwise incompetent manner." *Ames v. Yellowcab of D.C., Inc., Civ. No. 00-3116, 2006 U.S. Dist. LEXIS 67788, at *25 (D.D.C. Sept. 21, 2006); see also Restatement (Third) of Agency § 7.05* ("A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent."). Defendants concede that Kane was hired as an agent to perform security for Iverson on the night of the fight at the Eyebar. (*See, e.g.,* Defs.' Mot. for New Trial at 13 (referring to Kane as Iverson's "agent").) Accordingly, [*366] the jury was asked to determine "whether Allen Iverson knew or should have known that Jason Kane behaved in a dangerous or otherwise incompetent manner, whether Allen Iverson had the opportunity [**6] and ability to stop Jason Kane's actions towards the plaintiffs, . . . whether he failed to use reasonable care to control Jason Kane's actions towards the plaintiffs," and whether Iverson's "failure to use reasonable care was a substantial factor in bringing about the injuries suffered by the plaintiff." (Jury Instructions [Dkt. # 112] at 16-17.) These instructions were in accordance with the law in the District of Columbia on negligent supervision, and they do not constitute plain error.

1   Defendants further argue, without citation to any legal authority, that the Court improperly answered the jury's questions relating to battery. Defendants' arguments are based on their conjecture that because of the Court's battery instruction (which they requested), the jury "was confused as to whether proximate cause was an element of battery." (Defs.' Mot. for New Trial at 15.) Defendants apparently assume, based on the jury's question about whether an action that "initiates a string of events" constitutes "proximate cause," that the jury's verdict on the battery claim was based on an "erroneous premise." (Defs.' Mot. for New Trial at 16-17.) Since neither the Court nor defendants could possibly [**7] presume to know what facts the jury was referring to when it asked this question, the Court will not overturn the jury's verdict based on defendants' speculatory analysis, especially given defendants' failure to specifically object to the Court's response to the jury's questions.

The remainder of defendants' arguments -- including their arguments about the intentional infliction of emotional distress and negligent supervision claims, the need for expert testimony, and the Court's evidentiary rulings -- were thoroughly addressed at trial or at the pretrial conference. Because defendants raise nothing new with respect to these issues, the Court will not revisit its prior rulings.

In conclusion, defendants' motion for a new trial or judgment as a matter of law under *Fed. R. Civ. P. 59* and *50* [Dkt. # 125 and # 126] must be **DENIED**. In addition, their motion for remittitur [Dkt. # 124] must be **DENIED** because the jury's award of damages was well within the

Case 1:06-cv-00792-CKK   Document 27-12   Filed 02/05/2008   Page 4 of 4

503 F. Supp. 2d 363, *; 2007 U.S. Dist. LEXIS 64705, **

Page 3

"reasonable range [in] which the jury may properly operate. *Jeffries v. Potomac Dev. Corp., 261 U.S. App. D.C. 355, 822 F.2d 87, 96 (D.C. Cir. 1987)* (quoting *Wingfield v. Peoples Drug Store, 379 A.2d 685, 687 (D.C. 1977)*. Defendants' motion to strike plaintiff's [**8] opposition [Dkt. # 134] is also **DENIED**, and plaintiff's motion for an extension of time [Dkt. # 130] is **DENIED AS MOOT**.

ELLEN SEGAL HUVELLE

United States District Judge

Date: September 4, 2007