# EXHIBIT 10

1

1  UNITED STATES DISTRICT COURT
2  FOR THE DISTRICT OF COLUMBIA
3  - - - - - - - - - - - - - - - -x
                                  :
4  GREGORY BROADY,                :
                                  :
5           Plaintiff,            :
                                  :  Case No.
6      vs.                        :  1-06-CV-00792-RMC
                                  :
7  ZANZIBAR ON THE                :
   WATERFRONT, LLC, et al.,       :
8                                 :
           Defendants.            :
9                                 :
   - - - - - - - - - - - - - - - -x
10
11
12
13        Deposition of GREGORY BROADY
14              Washington, D.C.
15           Wednesday, May 2, 2007
16                11:15 a.m.
17
18
19
20 Job No. 2-101327
21 Pages 1 - 128
22 Reported by: Paula J. Eastes

COPY



L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

61

1  give me any problems letting me out.  There was a lot
2  of people.
3      Q   Do you have any estimate as to how many
4  people were upstairs?
5      A   I have no idea.
6      Q   How long were you up in the SkyClub at the
7  same time Allen Iverson was?
8          How long were the both of you physically in
9  the SkyClub?
10     A   Estimation 30, 45 minutes.
11     Q   During that time were there any fights up
12 at the SkyClub?
13     A   Not at the time.  Not at that time.
14         As I walked back from the bathroom you
15 could see people pushing and so forth, but it wasn't
16 like it was any fights.  No.
17     Q   When you say you could see people pushing,
18 what are you describing?
19     A   I guess people were trying to get from
20 different areas of the club.  It was very crowded.
21     Q   You are saying people pushing kind of their
22 way through the crowd or people pushing as if they

62

1  were about to get into a fight?

2       A    When I got back to the security guard it
3  seemed like the people were trying to get over to the
4  VIP area and they were trying to keep people out so
5  they was pushing back and forth.

6            I was standing there looking at it because
7  I had a band on my hand.  So, I just stood there
8  waiting.

9       Q    Were there any punches thrown?

10      A    None that I saw.

11      Q    So, in any event you went to go back to
12 your seat; is that correct?

13      A    Correct, sir.

14      Q    Tell me what happened.

15      A    When I noticed the pushing I stepped back
16 and waited.  Then once it settled down I asked the
17 gentleman, I showed him my band, I was like can I get
18 in?  He told me no, get back off me, get off me.  So,
19 I stepped back.

20           So, I asked him again.  I was like here I
21 have a special band to get over there.  He is like,
22 I told you get off me, I told you get off me.  I was

119

1    prior to the evening in question?

2        A    No, sir.

3        Q    Have you seen any of them since then?

4        A    No, sir.

5        Q    Paragraph 6 of your Complaint alleges that

6    the actions of John Doe were known to defendant

7    Zanzibar on The Waterfront and to Allen Iverson.

8             How do you know that the actions of John

9    Doe were known to Mr. Iverson?

10       A    Through Mr. Green or Foots in a telephone

11   conversation said that the gentleman that I explained

12   to him that I had a problem with, that I described,

13   said that they had a problem with him and they were

14   going to escort him out of the club and that is when

15   Allen Iverson stepped up and said if he goes, then I

16   go, and they said that they were forced to let him

17   stay.

18       Q    This was a conversation you had with

19   Mr. Green after that evening?

20       A    It was either Mr. Green or Foots. I want

21   to say it is Mr. Green because me and him talked quite

22   a bit.

1    Q    But it was after that evening?

2    A    Yes, sir.

3    Q    How do you know that the actions of John

4  Doe were known to Zanzibar?

5    A    A lot of people that were there said that

6  this particular -- well, after many people complained

7  about it.  That is the reason why they went up and

8  approached him, approached that person, and that is

9  when Allen Iverson said if he goes, then I go.

10        Mr. Green said that he was aware there was

11  quite a few incidents that happened the night before

12  that he was investigating.  He didn't know that I was

13  a part of it.  That was the Sunday.

14    Q    Did you see Allen Iverson giving directions

15  to the individual you identified as John Doe?

16    A    I wasn't around him too long.

17    Q    Your Complaint also alleges that John Doe

18  was acting as an employee of the defendants in

19  directing patrons and controlling patrons at Zanzibar

20  on The Waterfront on the evening in question.

21        How do you know that John Doe was an

22  employee, acting as an employee of Zanzibar?

VIDEOTAPED DEPOSITION OF GREGORY BROADY
CONDUCTED ON WEDNESDAY, MAY 2, 2007

121

```
 1        A    He was stopping people from moving from one
 2   place to another.
 3             I mean, that just shows a position of
 4   authority.
 5        Q    Then the same question with Mr. Iverson.
 6   How do you know that he was acting as his employee?
 7             Let me rephrase that question.  It was
 8   unclear.
 9             How do you know that John Doe was acting as
10   the employee of Mr. Iverson on the evening in
11   question?
12        A    They appeared around the same time.
13             I am not aware who he was working for.  I
14   just looked at him as security.
15        Q    I believe, correct me if I am wrong, I
16   believe you stated that at some point you left the
17   SkyClub VIP area to go to the bathroom.
18             Is that correct?
19        A    Yes.  I walked right across.
20        Q    I'm sorry.  Maybe I was a little bit
21   confusing.  I was referring to the SkyClub and the VIP
22   area as the same thing.  So, I guess I really meant
```

122

1    the SkyClub.

2        A    Yes. I did.

3        Q    When you were attempting to return to the
4    SkyClub after using the bathroom, you were stopped by
5    the individual identified as John Doe, correct?

6        A    Correct, sir.

7        Q    During this time do you know where
8    Mr. Iverson was?

9        A    He was right close. You could see him
10   where I was standing. He was right there. He was
11   against the wall.

12       Q    So, you could actually see him. All right.
13            Did he do anything when this was going on?

14       A    There was quite a few people between the
15   security guy and him.

16            MS. SNEE:    Did you see him do anything?

17            THE WITNESS:    No.

18   BY MR. TUCKER:

19       Q    I think this was probably covered already.
20            The individual you have identified as John
21   Doe, at any point did he identify himself to you?

22       A    He was very aggressive.

123

1       Q      But in terms of identifying his name or his

2    role that evening?

3       A      I can't recall that.

4       Q      I believe you said you saw the security

5    guard -- let's refer to him as John Doe -- you saw

6    John Doe, I believe you said you saw him swinging at

7    you from your peripheral vision, correct?

8       A      Correct, sir.

9       Q      That was from your right side?

10      A      Yes, sir.

11      Q      And you could identify him throwing the

12   blow at the time it was thrown?

13      A      Yes, sir.

14      Q      And then he hit you one more time and that

15   was all you remember?

16      A      That is all I remember.  That is all I

17   recall.

18      Q      Until you woke up?

19      A      Yes, sir.

20      Q      I think you mentioned a shoulder surgery

21   towards the beginning of the deposition.

22             Was that the collarbone injury you were

VIDEOTAPED DEPOSITION OF GREGORY BROADY
CONDUCTED ON WEDNESDAY, MAY 2, 2007

128

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2               I, Paula J. Eastes, Registered

3    Professional Reporter, the officer before whom the

4    foregoing proceedings were taken, do hereby certify

5    that the foregoing transcript is a true and correct

6    record of the proceedings; that said proceedings were

7    taken by me stenographically and thereafter reduced to

8    typewriting under my supervision; and that I am

9    neither counsel for, related to, nor employed by any

10   of the parties to this case and have no interest,

11   financial or otherwise, in its outcome.

12              IN WITNESS WHEREOF, I have hereunto set my

13   hand and affixed my notarial seal this 8th day of May

14   2007.

15

16   My commission expires: February 14, 2011

17

18   *Paula J. Eastes*

19   NOTARY PUBLIC IN AND FOR THE

20   DISTRICT OF COLUMBIA

21

22