UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GREGORY BROADY,

    Plaintiffs,

      v.

ZANZIBAR ON THE WATERFRONT, LLC,
*et al.*,

    Defendants.

Civil Action No. 06-792 (CKK)

**MEMORANDUM OPINION**
(September 15, 2008)

Plaintiff, Gregory Broady, brings the above-captioned action alleging that he incurred significant injuries when he was struck by an unidentified security guard at the Zanzibar on the Waterfront ("Zanzibar") nightclub on June 4, 2004. Plaintiff's Complaint identifies the security guard as "John Doe" and alleges that John Doe was employed either by Zanzibar or by Allen Iverson, a professional basketball player who was at Zanzibar on the night Plaintiff was allegedly injured. Plaintiff's Complaint names both Zanzibar and Iverson as Defendants to this action, along with John Doe, and Plaintiff has not identified John Doe's employer during the course of discovery in this matter.

Currently pending before the Court is Defendant Allen Iverson's [25] Motion for Summary Judgment, which Plaintiff opposes. Defendant Zanzibar has not moved for summary judgment in this case. Upon a searching review of Defendant Iverson's Motion for Summary Judgment, Plaintiff's Opposition thereto,[1] the exhibits attached to each party's brief, and the relevant statutes

---

[1] Defendant Iverson did not file a Reply in support of his Motion for Summary Judgment.

and case law, the Court shall DENY Defendant Iverson's [25] Motion for Summary Judgment.  In particular, the Court finds that a genuine issue of material fact exists as to whether Defendant Iverson had an agency relationship with John Doe when Doe allegedly struck and injured Plaintiff.  As Defendant Iverson's Motion for Summary Judgment is primarily based upon a claim that Defendant Iverson did not have an agency relationship with John Doe, the existence of a question of material fact in that respect precludes the entry of summary judgment in favor of Defendant Iverson.  Further, as discussed below, Plaintiff's Complaint does not delineate specific claims against each Defendant or set out specific legal cause(s) of action.  In addition, Plaintiff's filings in connection with his Opposition to Defendant Iverson's Motion include a number of factual assertions that are entirely unsupported by the record.  The Court therefore identifies the most egregious of Plaintiff's unsupported assertions below, in order to frame the future litigation of this case, and shall order Plaintiff to file a Notice setting forth his precise legal claims against each Defendant.

## I.  BACKGROUND

The Court begins its discussion of the facts by noting that this Court strictly adheres to the text of Local Civil Rule 7(h)(1), which requires that each party submitting a motion for summary judgment attach a statement of material facts as to which that party contends there is no genuine issue, with specific citations to those portions of the record upon which the party relies in fashioning the statement.  *See* LvR 7(h)(1).  The party opposing such a motion must, in turn, submit a statement of genuine issues enumerating all material facts which the party contends are at issue and thus require litigation.  *See id.*  Where the opposing party fails to discharge this obligation, a court may take all facts alleged by the movant as admitted.  *Id.*  As the District of Columbia Circuit has emphasized, "[LCvR 7(h)(1)] places the burden on the parties and their counsel, who are most

familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir. 1992)). "Requiring strict compliance with the local rule is justified both by the nature of summary judgment and by the rule's purposes." *Id.* (quoting *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980). As such, in resolving the instant summary judgment motion, this Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

The facts set forth below are taken from Defendant Iverson's Statement of Undisputed Material Facts ("Iverson's Statement"), Plaintiff's Statement of Disputed Material Facts ("Plaintiff's Statement"), and the factual record in this case. The Court notes that both parties' Statements contain factual assertions that are not supported by the record in this case, and in many instances, no citation to the record is provided. Accordingly, in this Background section the Court only sets forth the minimal factual background required to resolve Defendant Iverson's Motion for Summary Judgment. In the Discussion section below, the Court explains the genuine issue of material fact that precludes the entry of summary judgment in favor of Defendant Iverson and then, in an attempt to frame this case as it proceeds towards trial, continues to note the significant factual assertions made by Plaintiff in his Opposition and Responsive Statement that are unsupported by the factual record.

> A.    *Relevant Factual Background*

The events at issue in this case took place on the night of June 4, 2004 at Zanzibar on the Waterfront, a nightclub located on the waterfront in Southwest Washington, DC. Iverson Stmt. ¶

1; Pl.'s Stmt. ¶ 1.  Both Plaintiff and Mr. Iverson were present at Zanzibar as patrons on the night

in question.  *Id.*  While neither party provides deposition testimony describing the circumstances that

led Plaintiff to be at Zanzibar on the night in question, Defendant Iverson does proffer a transcript

of a recorded telephone statement regarding the events at issue in this case, which Plaintiff provided

to Scottsdale Insurance Company on August 16, 2005.  *See* Iverson Ex. C.  The Court refers to

Plaintiff's statements therein solely by way of background.  According to Plaintiff, on the night of

June 4, 2004, he met a group of friends at Zanzibar for a birthday celebration.  *See id.* at 3.  Plaintiff

stated that everyone in his group received a "VIP" wristband that allowed them to enter the "Sky

Club," located on the top floor of Zanzibar.  *Id.*  Inside the Sky Club was another, more secluded,

area referred to as the "MJ Room" or the "VIP area."   Iverson Stmt. ¶¶ 32-34; Pl.'s Stmt. ¶¶ 32-34.

The VIP Area is separated from the rest of the Sky Club by two metal curtains and is occasionally

cordoned off for use by celebrities or other individuals hosting private events at Zanzibar.  *Id.*

   In his recorded statement, Plaintiff explained that he and his friends were seated in the VIP

Area when a group of people entered, including basketball star Allen Iverson.  Iverson Ex. C (Pl.'s

8/16/05 Stmt.) at 3.[2]  According to Plaintiff, at about the same time as Iverson entered the VIP Area,

a man appeared wearing black jeans and a T-shirt that read "Security."  Iverson Ex. B (5/2/07 Broady

Dep.) at 57:2-7.  Plaintiff's Complaint identifies this individual as "John Doe."  Compl. ¶ 5.  During

his deposition in this case, Plaintiff testified that John Doe and two other individuals dressed in

---

[2] A dispute exists in the record as to whether Plaintiff was told in advance that Iverson was expected at Zanzibar on the evening in question: Plaintiff asserts that a Zanzibar owner told him as much, *see id.* at 3; Pl.'s Ex. 11 (2/5/08 Broady Aff.) ¶ 1, while Zanzibar's Rule 30(b)(6) witness, Michael Daley, testified that Zanzibar did not know in advance that Allen Iverson would be coming to the club, Pl.'s Ex. 1 (2/7/07 Daley Dep.) at 48:2-5.  This dispute is not material to resolving Defendant Iverson's Motion for Summary Judgment.

similar clothing blocked off the VIP Area by posting themselves at the entrances to the VIP Area. Iverson Ex. B (5/2/07 Broady Dep.) at 57:13:58-20.

Plaintiff also testified that approximately 30 or 45 minutes after Iverson entered the VIP Area, Plaintiff left to use the restroom, which was located outside of the VIP Area in the Sky Club. *Id.* at 60:17-61:10.  According to Plaintiff, he left his cell phone with a female friend inside the VIP Area.  Iverson Ex. C (Pl.'s 8/16/05 Stmt.) at 3.  Both Plaintiff and Zanzibar's Rule 30(b)(6) witness testified that the Sky Club was crowded and that many people were attempting to enter the VIP Area. Iverson Ex. B (5/2/07 Broady Dep.) at 61:17-62:5; Pl.'s Ex. 1 (2/7/07 Daley Dep.) at 61:4-62:12.[3] Plaintiff testified that he approached John Doe to ask to reenter the VIP Area and showed John Doe his VIP wristband.  Iverson Ex. B (5/2/07 Broady Dep). at 62:2-63:3.  According to Plaintiff, John Doe directed Plaintiff to the security guard posted at the other entrance to the VIP Area, but that security guard directed Plaintiff back to John Doe.  *Id.* at 63:1-11.  Plaintiff further testified that when he returned to first entrance, John Doe told him to speak with an individual that Plaintiff identified as Doe's "supervisor or manager."  *Id.* at 63:22-64:10.  Plaintiff describes the alleged supervisor/manager as a man with dreadlocks who was dressed differently than the security guards posted at the entrances to the VIP Area.  *Id.* at 64:6-65:5, 65:16-66:3.  Plaintiff does not know who the alleged supervisor/manager was or whom he worked for, and testified that the individual was not

---

[3] Pursuant to Federal Rule of Civil Procedure 30(b)(6), "a party may name as [a] deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . . . The persons designated must testify about information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6).  Here, Michael Daley testified on behalf of Zanzibar.  *See* Pl.'s Ex. 1 (2/2/07 Daley Dep.).  Mr. Daley is the manager of Zanzibar.  Pl.'s Ex. 3 (Zanzibar's Answers to Interrogatories), Answer to Question 2.

the Zanzibar owner known to Plaintiff as "Foots".  *Id.*

According to Plaintiff, he explained to the alleged supervisor/manager that he needed to reenter the VIP Area because he had left his cell phone with a friend.  *Id.* at 65:6-12.  The supervisor/manager, however, told Plaintiff that the VIP Area was now too crowded and that the supervisor/manager would go into the VIP Area and retrieve Plaintiff's cell phone for him.  *Id.* at 65:9-13.  Plaintiff testified that he remained near the entrance to the VIP Area, which was still guarded by John Doe, while the alleged supervisor/manager entered the VIP Area.  *Id.* at 66:4-9, 66:20-67:4.  According to Plaintiff, the alleged supervisor/manager turned in the wrong direction upon entering the VIP Area and Plaintiff signaled to him by raising his hand.  *Id.* at 67:3-8; Iverson Ex. C (Pl.'s 8/16/05 Stmt.) at 4.  During his deposition, Plaintiff testified, "[w]hen I put my hand back down that is when I noticed being hit on the right side of my face.  I turned around and I got hit straight on.  The next thing I remember I woke up in the elevator with a white towel on my face with blood all over my face."  Iverson Ex. B (5/2/07 Broady Dep.) at 67:9-13; *see also* Iverson Ex. C (Pl.'s 8/16/05 Stmt.) at 4.  Plaintiff identified the individual that hit him as "the same gentleman that [he] had been talking to earlier," i.e., John Doe.  Iverson Ex. B (5/2/07 Broady Dep.) at 67:18-22.

    B.    *Plaintiff's Complaint*

Plaintiff's Complaint alleges that he "suffered and continues to suffer from a brain bleed, surgery, pain and suffering, scarring, inconvenience, lost time from employment, mental anguish and discomfort, and will continue to suffer that in the future."  Compl. ¶ 23.  Plaintiff seeks judgment against Defendants–Allen Iverson, Zanzibar, and the unidentified John Doe–in the amount of $750,000.  *Id.* at 4.  Plaintiff's Complaint–which the Court notes was filed by counsel–does not

6

delineate particular legal claims against each Defendant.  The Court's review of the factual allegations in the Complaint suggests an intentional tort claim of assault and battery against John Doe and a *respondeat superior* claim against Iverson and/or Zanzibar based on Plaintiff's allegation that "John Doe was acting as the agent/employee and with the apparent authority of Zanzibar on the Waterfront, LLC, and Allen Iverson." *Id.* ¶ 17.  It is not clear from the four corners of the Complaint whether Plaintiff also attempts to assert a negligence claim against Iverson and/or Zanzibar. However, as discussed below, Plaintiff has only proffered expert testimony in support of a negligence claim against Zanzibar.

## II.  LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary

judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52, (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III. DISCUSSION

A.    *Plaintiff Cannot Prevail On a Negligence Claim Against Defendant Iverson*

As noted above, Plaintiff's counseled Complaint does not delineate any legal causes of action against Defendants, but the Court's review of the Complaint suggests that Plaintiff asserts an intentional tort claim of assault and battery against John Doe and a *respondeat superior* claim against Iverson and/or Zanzibar based on that alleged assault and battery. The Court cannot determine from

8

the four corners of the Complaint whether Plaintiff also attempts to assert a negligence claim against Iverson and/or Zanzibar.  However, it appears that the parties have assumed that Plaintiff asserts a negligence claim against Zanzibar, as they have retained experts on the standard of care that a nightclub owner owes to its patrons with respect to security personnel.  *See* Iverson Ex. H (Prelim. Op. of Norman D. Bates, Pl.'s Expert); Ex. I (Report of William T. Gaut, Zanzibar Expert).  Neither of these expert reports discuss what, if any, duty Iverson might have as a patron visiting a nightclub with his own security guards vis-a-vis other patrons at the nightclub.  As Judge Rosemary M Collyer noted in *Edwards v. Okie Dokie, Inc.*, a case involving, *inter alia*, a claim of negligent hiring and supervision brought by nightclub patrons against the nightclub's owner based on security guards' conduct, "D.C. district and local courts have held that expert testimony is required to establish the standard of care for a claim of negligent hiring, training, and supervision of security personnel." 473 F. Supp. 2d 31, 45 (D.D.C. 2007) (citing *Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79, 89 (D.D.C. 2000) and *Predzin v. DC Arena Ltd P'ship*, No. 02-9582 (D.C.Sup.Ct. Oct 7, 2003)).  Here, it is far from clear to the Court that Plaintiff attempts to assert a negligent hiring, training, or supervision claim against Iverson.  To the extent he does, however, such a claim cannot succeed because Plaintiff has not identified any expert testimony establishing the standard of care owed to Plaintiff by Mr. Iverson in the situation at issue here.[4]

---

[4] While Defendant Iverson devotes a portion of his Motion for Summary Judgment to discussing other perceived infirmities with a negligent hiring, training, or supervision claim against Defendant Iverson, *see* Iverson MSJ at 17-22, the Court does not discuss them herein because it is not clear on the face of the Complaint that Plaintiff intends to assert such a claim and such a claim would fail in the absence of expert testimony establishing the relevant standard of care.

B.     *A Genuine Issue of Material Face Precludes Summary Judgment With Respect to Plaintiff's* Respondeat Superior *Allegations*

The Court turns now to Defendant Iverson's Motion for Summary Judgment with respect to Plaintiff's intentional tort/*respondeat superior* allegations.  Iverson argues that the Court should grant him summary judgment on what he perceives to be Plaintiff's "vicarious liability theory, based on some alleged agency relationship between Mr. Iverson and John Doe." Iverson MSJ at 4.  Iverson then continues to argue that Plaintiff cannot establish that John Doe acted with the apparent authority of Iverson or acted as Iverson's actual agent or employee when he allegedly struck Plaintiff. *Id.* at 6-17.  Both of these arguments are premised on an assertion that Plaintiff cannot establish any agency relationship between John Doe and Allen Iverson; however, the record in this case reveals a genuine issue of material fact in this respect that narrowly precludes the entry of summary judgment in favor of Defendant Iverson.

As Iverson correctly notes, Plaintiff admits that he does not know who John Doe was working for on the night in question.  *See* Iverson Ex. B (5/2/07 Broady Dep.) at 121:9-14 ("Q: How do you know that John Doe was acting as the employee of Mr. Iverson on the evening in question? A: They appeared around the same time. *I am not aware of who he was working for.*  I just looked at him as security.") (emphasis added); *see also id.* at 57:8-12 ("Q: As far as you could tell, did [John Doe] appear to be part of Allen Iverson's group?  A: I just thought he was security.  I can't distinguish between the two.  I just thought he was security.").

For his part, Defendant Iverson has not been deposed in this matter, but has submitted an Affidavit.  *See* Iverson Ex. D (2/2/07 Iverson Aff.).  In relevant part, that Affidavit states:

3.     The date June 4, 2004 holds no special significance to me.
4.     In fact, I cannot specifically recall where I was or what I was doing on that

> date, which occurred more than two years ago.
>
> 5.       As such, I do not recall being at [] Zanzibar on the Waterfront on the evening
>          of June 4, 2004.

*Id.* at 1.  As noted above, Defendant Iverson does not contest being at Zanzibar on the night in

question and the record evidence demonstrates that he was at the club that evening.  *See* Iverson

Stmt. ¶ 1.  Defendant Iverson's Affidavit continues:

> 6.       In addition, although during the summer of 2004 I had retained an individual
>          known as Jason Kane to provide security for me in the Washington, D.C.
>          area, I do not recall being in the company of Mr. Kane on June 4, 2004.
>
> 7.       Furthermore, in an effort to ascertain where I may have been on that date, my
>          representatives contacted Mr. Kane, who informed them that he does not
>          recall being in my company at Zanzibar on the Waterfront on the evening of
>          June 4, 2004.
>
> 8.       I also have no recollection of ever being at the Zanzibar where an altercation
>          occurred involving one of my security, anyone traveling with me, or anyone
>          at all.

Iverson Ex. D (2/2/07 Iverson Aff). at 2.  Iverson's Affidavit does not constitute evidence that John

Doe was *not* acting as Iverson's agent on the night in question.  Instead, it is simply a neutral

statement with respect to the material question of whether John Doe was acting as Iverson's agent

or with Iverson's apparent authority when he allegedly struck Plaintiff.

   Zanzibar's Rule 30(b)(6) witness, Michael Daley, testified during Zanzibar's Rule 30(b)(6)

deposition that he was not sure whether Zanzibar had a full complement of security staff working

on the night of June 4, 2004, but that "[n]ormally on a typical weekend evening, there would have

been a full complement of . . . 10 to 13 security staff members."  Pl.'s E. 1 (2/7/07 Daley Dep.) at

21:12-19.[5]  Mr. Daley further testified that Iverson had been to Zanzibar twice and that he did not

---

[5] In addition to Mr. Daley's testimony, deposition testimony regarding Zanzibar's security
is provided by Zanzibar owner Ola Olasehinde, who was present at Zanzibar on June 4, 2004 in
the role of a patron, and Wendell Evans, who was Zanzibar's security manager as of June 2004
but does not know if he was working on the night in question.  *See* Iverson Ex. E (4/10/07 Evans

know whether the night in question was Iverson's first or second visit to the club. *Id.* at 48:20-49:3. Mr. Daley testified that he personally saw Iverson at Zanzibar on the night of June 4, 2004, *id.* at 49:14-16, and that Iverson arrived with a security detail that was "very hard to ignore. They were four big guys that looked like NFL lineman, and they made it clear that no one was going to get near Allen Iverson without their permission," *id.* at 55:15-20. According to Mr. Daley, Iverson had the same security personnel with him both times he visited Zanzibar. *Id.* at 49:6-8.

Mr. Daley further testified that on the night in question, Iverson's security guards were controlling who entered the VIP Area while Iverson was inside. *Id.* at 55:21-58:19, 59:18-22. Mr. Daley recounted that he saw Iverson's security guards blocking other Zanzibar patrons' entrance to the VIP Area, and that "if someone was really insistent, [Iverson's guards] would physically push them back out of the area." *Id.* at 61:4-11. Mr. Daley described Iverson's guards as "aggressive in their efforts to prevent people from getting back to where Allen Iverson was," *id.* at 62:10-12, but

---

Dep.), Ex. G (3/15/07 Olasehinde Dep); Pl.'s Ex. 4 (3/15/07 Olasehinde Dep), Ex. 7 (4/10/07 Evans Dep.). Based on these depositions, it is not clear whether, as of June 2004, Zanzibar's internal security personnel wore suits or t-shirts of the type Plaintiff describes John Doe as wearing. *Compare* Iverson Ex. F (2/2/07 Daley Dep.) at 39:13-40:9 (suggesting that Zanzibar security wore suits but stating that "there have been instances where they did wear shirts that said security," which at "one point [] were red [and] at one point [] were black.") *with* Iverson Ex. E (4/10/07 Evans Dep.) at 29:3-11 (stating that Zanzibar security wore suits rather than t-shirts). For his part, Plaintiff testified that he had seen security guards at Zanzibar wearing black "Security" t-shirts "[o]n different occasions where they have special guests." Iverson Ex. B (5/2/07 Broady Dep.) at 59:2-15. This testimony thus does not conclusively indicate whether John Doe worked for Zanzibar or Iverson.

In addition, during his deposition, Zanzibar owner Ola Olasehinde testified that Zanzibar might hire additional security if it knew that a celebrity would be visiting the club, but specifically stated that he "was not involved with the operation" at issue here. Iverson Ex. G (3/15/07 Olasehinde Dep.) at 57:3-58:6. While Iverson's Motion for Summary Judgment stresses this testimony, *see* Iverson MSJ at 9, it is of little probative value because Mr. Olasehinde explicitly stated that he did not have personal knowledge regarding Zanzibar's security on the night of June 4, 2004.

specifically noted that he did not "observe anybody being roughed up," *id.* at 61:4-5, 16-17.  Mr.

Daley also testified that he briefly spoke with Iverson to welcome him to Zanzibar, *id.* at 49:20-22,

and that he was initially denied access to the VIP Area by an Iverson security guard.  Specifically,

Mr. Daley testified: "I walked up to the curtain, explained to the gentleman that I was an owner and

that I wanted to get back there . . . . I had to get one of my security people to confirm I was an owner

before I was allowed back there."  *Id.* at 64:19-65:20, 55:21-56:10.  At one point during the Rule

30(b)(6) deposition, Mr. Daley described this as "a little incident," but explained "we resolved it, and

I ended up back there."  *Id.* at 101:14-17.  Mr. Daley assumed that his interaction with Iverson's

security guards occurred before Plaintiff was allegedly struck by John Doe.  *Id.* at 56:7-10.

The testimony of Zanzibar's Rule 30(b)(6) witness thus places Allen Iverson at Zanzibar on

the night of June 4, 2004 and is evidence that Iverson was accompanied by four security guards on

that night.  Mr. Daley's testimony is also evidence that, at some point during the night, guards

working for Iverson were controlling entrance to the VIP Area and were attempting to keep patrons

out of the VIP Area where Iverson was seated.  In contrast to Iverson's Affidavit statement that he

does not recall being at Zanzibar on the night of June 4, 2004 or being accompanied by security that

night, Mr. Daley's testimony creates a genuine issue of material fact as to whether Iverson had

security guards working for him at Zanzibar on the night in question.

Mr. Daley's testimony, however, does not bear the weight that Plaintiff would ascribe to it.

In particular, relying solely on Mr. Daley's deposition transcript, Plaintiff asserts that "John Doe

came onto the premises to guard for Allen Iverson," and that Daley "indicates John Doe was working

for Allen Iverson."  Pl.'s Stmt. ¶¶ 3, 5.  Mr. Daley, however, specifically testified that he "wasn't

there monitoring" the VIP Area and could only testify to "what [he] saw the brief time [he] was up

there." Pl.'s Ex. 1 (2/2/07 Daley Dep.) at 64:15:18. The portions of Mr. Daley's deposition transcript provided by the parties contain no indication whatsoever that Mr. Daley was present when John Doe allegedly struck Plaintiff, and Plaintiff's Opposition admits that Daley "was not at the Sky Club when the confrontation occurred." Pl.'s Opp'n at 5. As such, Mr. Daley's testimony simply does not prove that the John Doe who allegedly struck Plaintiff was one of the Iverson guards with whom Mr. Daley testified he interacted on June 4, 2004.

The Court finds that Mr. Daley's testimony nevertheless precludes the entry of summary judgment in favor of Defendant Iverson. Iverson's motion is premised upon an assertion that Plaintiff cannot prove the existence of an agency relationship between Iverson and John Doe. *See generally* Iverson MSJ. Iverson is correct that Plaintiff has not yet proven such a relationship, and Plaintiff may very well be required to do so in order to recover against Iverson on a *respondeat superior* theory at trial. At this point, however, where Iverson offers only his Affidavit that he does not "recall" being at Zanzibar with security on the night in question, Mr. Daley's testimony creates a genuine issue of material fact as to whether Iverson was, in fact, there with a security detail. This threshold factual issue prevents the Court from conducting the analysis necessary to evaluate whether Plaintiff can prove that John Doe acted with the actual or apparent authority of Iverson. Accordingly, the Court must deny Defendant Iverson's Motion for Summary Judgment.

C.    *Many of Plaintiff's Factual Allegations are Not Supported by Record Evidence*

Although the Court denies Defendant Iverson's Motion for Summary Judgment, it does so based upon the existence of a genuine issue of material fact created by the testimony of Zanzibar's Rule 30(b)(6) witness, not on the strength of Plaintiff's proffered evidence. To the contrary–in an attempt to frame this case as it proceeds toward trial–the Court notes that a number of the factual

assertions included in Plaintiff's Statement are entirely unsupported by the factual record to which Plaintiff cites, and that his Opposition to Defendant Iverson's Motion for Summary Judgment includes a number of flat assertions of fact without any supporting citations. The Court addresses some of the most egregious examples herein, but notes that the failing pervades Plaintiff's filings. If this case proceeds to trial, Plaintiff will not be allowed to rest on unsupported allegations. Most significantly, in order to prevail on a claim of *respondeat superior*, he will need to establish an actual or apparent agency relationship between John Doe and either Zanzibar or Allen Iverson.

As discussed above, Plaintiff cannot do so based solely upon Mr. Daley's testimony as Zanzibar's Rule 30(b)(6) witness. Even if Mr. Daley's testimony conclusively established that Iverson brought security guards with him to Zanzibar on the night in question and that, at some point during the night, those guards aggressively controlled entrance to the VIP Area of the Sky Bar, Mr. Daley's testimony does not establish that the John Doe who allegedly struck Plaintiff was one of those security guards. Nor does Mr. Daley's testimony address the details of Iverson's relationship to the security guards he brought with him to Zanzibar, i.e., whether they were his employees or independent contractors. Similarly, Plaintiff cannot rely on Mr. Daley's testimony to claim that guards working for Iverson were "pushing and shoving and aggressively manhandling" Zanzibar patrons before the unidentified John Doe allegedly struck Plaintiff. *See* Pl.'s Stmt. ¶ 20. As noted above, Mr. Daley's testimony described Iverson's guards as "aggressive in their efforts to prevent people from getting back to where Allen Iverson was," Pl.'s Ex. 1 (2/2/07 Daley Dep) at 62:10-12, but specifically noted that he did not "observe anybody being roughed up," *id.* at 61:4-5, 16-17.

Plaintiff also attempts to rely on Mr. Daley's testimony in support of a claim that John Doe had previously accompanied Allen Iverson to Zanzibar and "acted in a dangerous and aggressive

15

manner," but this claim is again unsupported by Mr. Daley's testimony.  Pl.'s Stmt. ¶¶ 23, 27.  First, although Mr. Daley testified that Iverson visited Zanzibar twice and was accompanied by the same security guards each time, Mr. Daley did not know whether the incident in question occurred on the night of Iverson's first or second visit.  *See* Pl.'s Ex. 1 (2/2/07 Daley Dep.) at 48:20-49:3.  Mr. Daley also denied having "ever had problems with some other body's security in [the Zanzibar facility]" prior to June 4, 2004.  *Id.* at 55:9-14.  Zanzibar's Answers to Interrogatories do state that Iverson had visited Zanzibar at least once before June 4, 2004.  Pl.'s Ex. 3 (Zanzibar Answers to Interrogatories) at 2.  Zanzibar's Interrogatory Answers further explain that Zanzibar "is not aware of any other allegations of assault by members of Mr. Iverson's entourage, although there were problems because Iverson and his entourage were very disrespectful of the premises, left a large mess.  Iverson's security people were felt to be overly aggressive in their attitude towards others."  *Id.* at 2-3.  The Court notes, however, that even this interrogatory answer does not support Plaintiff's claim that "John Doe had previously been [at Zanzibar] and acted in a dangerous and aggressive manner," Pl.'s Stmt. ¶ 27, because Plaintiff has not proffered any evidence establishing that John Doe was actually a member of Iverson's entourage.

Even more egregious is Plaintiff's assertion in his Opposition that "Iverson has not disputed the guards were acting as his agents."  Pl.'s Opp'n at 5.  Plaintiff supports this assertion with a citation to an entirely separate case, *Godfrey v. Iverson*, which involved allegations arising out of a physical altercation involving Jason Kane, the man identified by Iverson in his Affidavit as providing security for him during the summer of 2004.  *See* 503 F. Supp. 2d 363 (D.D.C. 2007).  The altercation at issue in the *Godfrey* case, however, occurred in July 2005, i.e., more than a year after Plaintiff was allegedly injured by John Doe, and took place at a different nightclub.  *Id.* at 364.  In

the *Godfrey* case, Iverson "concede[d] that Kane was hired as an agent to perform security for Iverson on the night of the fight at the Eyebar." *Id.* at 365. This concession is entirely irrelevant to the issue in this case: whether the John Doe who allegedly struck Plaintiff on June 4, 2004 at Zanzibar was an agent of Defendant Iverson.

Finally, Plaintiff asserts that after he was "struck and injured, the John Doe guard was approached about his behavior, Allen Iverson indicated, 'If he goes, I go.', and both were allowed to stay. This represents ratification of the conduct by Allen Iverson." Pl.'s Stmt., Add'l Facts ¶ 15. In support of this assertion, Plaintiff cites to his own deposition testimony that he had a telephone conversation with a Zanzibar owner in the days following the alleged incident with John Doe, during which the Zanzibar owner

> said that the gentleman that I explained to him that I had a problem with, that I described, said that they had a problem with him and they were going to escort him out of the club and that is when Allen Iverson stepped up and said if he goes, then I go, and they said that they were forced to let him stay.

Pl.'s Ex. 10 (5/2/07 Broady Dep.) at 119:8-120:13. Plaintiff's testimony represents inadmissible hearsay because Plaintiff offers it for the truth of the matter asserted, i.e., to prove that Allen Iverson said "If he goes, I go." *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Indeed, Plaintiff's testimony represents double hearsay; he offers his own report as to what the unidentified Zanzibar owner purportedly told him Iverson allegedly said on June 4, 2004. In short, Plaintiff's double hearsay testimony cannot support a conclusion that Iverson ratified John Doe's alleged action in striking Plaintiff.

The foregoing are only the most egregious examples of the unsupported factual assertions

included in Plaintiff's Statement and Opposition.  Indeed, Plaintiff's Opposition consists almost entirely of factual assertions without any supporting legal or record citations.  The Court does not detail all of these deficiencies herein because doing so would not be an efficient use of the Court's resources.  Instead, the Court notes that as this case proceeds to trial, Plaintiff will be required to first delineate his precise legal claims against each Defendant (and identify those portions of his Complaint that he believes provide support for each claim), and will then be required prove his claims through admissible evidence rather than hearsay and unfounded supposition.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall DENY Defendant Allen Iverson's [25] Motion for Summary Judgment.  As set forth in the accompanying Order, the Court shall require Plaintiff to file a Notice with the Court–no later than September 30, 2008–delineating his precise legal claims against each Defendant and indicating those portions of his Complaint that he believes support each claim.  An appropriate Order accompanies this Memorandum Opinion.


Date:   September 15, 2008


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge